Plaintiff Isaac Fields has filed this suit against his employer, Dayton Seed and Feed Store, and its insurer, General Casualty Company of America, in which he alleges that as a result of an accident in the scope and performance of his regular employment he was rendered totally and permanently incapable of performing work of any reasonable character within the terms and meaning of the Workmen's Compensation Laws of the State of Louisiana, and accordingly he prays for judgment condemning the defendants to pay to him compensation at the rate of $16.25 per week, not to exceed 400 weeks, with 5% per annum interest on each weekly payment from due date until paid less compensation payment, less the credit for 18 weeks compensation paid to plaintiff by defendants before the suit was filed, and also $500.00 or so much *Page 844 
thereof as may be necessary for drug and hospital expenses.
Plaintiff alleges in Article 4 of his petition the following:
"Petitioner was employed by his said employer to load sacks of feed on trucks and cars, which sacks of feed weighed 100 pounds each, and it was while loading a sack of feed on the back of a pickup truck, owned by petitioner's said employer, on or about May 18, 1946, at about 4:00 P.M., and while lifting said sack of feed over the top of a frame on the back of said truck, the top of which frame was about six (6') feet high from the ground, that he was injured, and while lifting said sack of feed over the back of said truck and raising same approximately six feet from the ground, he felt a sharp pain in the center of his stomach which felt like a knife sticking him."
Defendants denied the material allegations of plaintiff's petition.
The case was duly tried and the District Court rendered judgment in favor of the defendants, dismissing plaintiff's suit at his cost. The Judge of the District Court, in his short written reasons stated that (1) Mrs. Charles Hebert was not at the time of the alleged accident engaged in a hazardous occupation within the sense and meaning of the Workmen's Compensation Law; and (2) that the evidence fails to show that plaintiff suffered a hernia in the course of his employment by the said Mrs. Hebert.
Plaintiff has appealed from this adverse judgment.
The plaintiff was employed by the Dayton Seed and Feed Store, which was owned and operated by Mrs. Charles J. Hebert at 4237 Plank Road, East Baton Rouge Parish, Louisiana, on the 23rd day of November, 1945 as a laborer, and he continued in this employment until on or about the 18th day of May, 1946. The Dayton Seed and Feed Store sold feed, seed, fertilizer and baby chicks. Plaintiff was employed to load sacks of feed on customers' cars or trucks and to keep the store clean.
It is shown that the Dayton Seed and Feed Store during the time Isaac Fields was employed and on the date of his alleged injury did not own or operate in connection with its business any motor vehicle or machinery. Charles Hebert owned a 1940 Model Ford which was his personal car and was not used in connection with the business except to go to the bank and post office, however, Isaac Fields never used this car or came in contact with it at all.
The plaintiff testified that on the 6th day of May, 1946, that he picked up a sack of feed and loaded it on a one-half ton truck, and that he felt a pain in the region of his stomach and it continued to hurt "worse and worse". He called in Dr. Lawton, who visited him the next morning at plaintiff's home. Plaintiff was confined to bed for about four weeks, and after a visit to Dr. Dupre at Ville Platte he was given a slip by this doctor and also Dr. Lawton to go to the Charity Hospital for an operation, which was in due course performed by Dr. Stander of Baton Rouge, Louisiana. Plaintiff contends that as a result of the operation it left sensitive scar tissue and a mass which the doctors were unable to account for in the operative region, which disabled plaintiff from performing any work of a reasonable character.
The plaintiff contends that the judgment of the. District Court should be reversed and that there should be judgment in favor of plaintiff for four reasons, viz:
[1] (1) That the business of the Dayton Seed and Feed Store comes within the purview of the Workmen's Compensation Law for the reason that it involves the operation of a warehouse;
In other words, counsel for plaintiff contends that Fields was required to lift and carry sacks of feed from the warehouse of his employer to the vehicles of the customers trucks or automobiles, and that it was while in the operation of his employer's business working in a warehouse and in the operation of same, and while in the scope and performance of his regular duties that he was injured and suffered an accident, and, therefore, the business in question came within the definition of a warehouse as stated in the Compensation Law, Section 1 of Act No. 20 of 1914, as amended, subparagraph 2(a), Section 4391, Dart's Gen.St. *Page 845 
The record fails to contain any testimony with regard to a warehouse or what kind of a warehouse was involved in this case, in fact, as stated by counsel for defendants in their brief, the word "warehouse" does not appear in the testimony. However, it is undisputed that the Dayton Seed and Feed Store was a retail mercantile establishment dealing in feeds and seeds, and it can only be presumed that its feed was stored in the same building as the retail store. Regardless of the lack of proof on this point, in the case of Caldwell v. Geo. Sproull Co., La. App., Second Circuit, 1935, 164 So. 651, 653, the Court considered a wholesale and retail establishment dealing in painter's supplies, and in this case plaintiff contended there was a warehouse, but the Court said:
"The statute declares to be hazardous the occupation of operating warehouses. Such a business is a distinct and well-defined one. A 'warehouseman' is one 'lawfully engaged in the business of storing goods for profit'. Act No. 53 of 1920. The goods referred to, of course, being goods of third persons for which negotiable receipts are issued. Act No. 221 of 1908. A permit for the operation of such a business has to be obtained from the clerk of the civil district court wherein the business is carried on. Section 1 of Act No. 82 of 1926. Other requirements are prescribed by the statute before a person may legally become a warehouseman. Surely, because a wholesale dealer stores surplus stock bought or manufactured by him, in the basement of his building, as is done by defendant, he does not thereby engage in the occupation of operating a warehouse. Such a room is no more than a storage room. It is in no sense a warehouse. The position of plaintiff here discussed is not tenable."
[2] (2) Plaintiff contends that this case was one within the purview of the Compensation Act for the reason that an agreement had been reached between employer and employee in accordance with subparagraph 3 under the heading "railways" in the first section of Act No. 20 of 1914 as amended, which contains the following:
"If there be or arise any hazardous trade, business or occupation or work other than these hereinabove enumerated, it shall come under the provisions of this act. The question of whether or not a trade, business or occupation not named herein is hazardous may be determined by agreement between the employer and employee or by submission at the instance of either employer or employee to the Judge of the Court which shall have jurisdiction over the employer in a civil case. The decision of the Court shall not be retroactive in its effect."
Plaintiff contends that as Fields had worked some six months or more for Dayton Seed and Feed Store before he was injured and had been paid regularly by his employer, and that as the Insurer, General Casualty Company of America, had issued a written policy covering compensation claims and had collected premiums for the protection of the Dayton Seed and Feed Store, and that as the wages earned by Isaac Fields were included in calculating the amount of the premium paid on this insurance policy by this employer, that this constituted an implied agreement which had been recognized and sanctioned by Dayton Seed and Feed Store, Isaac Fields and General Casualty Company of America. There was never any express agreement by the plaintiff, Isaac Fields, and his employer, Dayton Seed and Feed Store, whatsoever, relating to whether or not Isaac Fields' employment was hazardous. Our law does not recognize an implied agreement to come under the Workmen's Compensation Law. Benjamin v. Standard Accident Ins. Co. of Detroit, 1922,152 La. 874, 74 So. 428.
[3] Under this same heading, plaintiff also contends that if the action of the employer and the insurer, which consisted of the issuance of this policy of insurance and the collection of premiums based on the payroll of Mrs. Hebert, the treatment by physicians at the expense of the employer, and the insurer, and seventeen or eighteen weeks compensation paid Isaac Fields, did not constitute an admission of liability, that these actions have estopped them from denying the hazardousness of the business and the employment. This argument has been answered by our Courts and specifically so by the Orleans Court of Appeal in the *Page 846 
case of Franz v. Sun Indemnity Co., 1942, 7 So.2d 636, 638, wherein the Court said:
"If by the issuance of a policy in which it agreed to indemnify the employer corporation against loss due to liability for compensation and by the acceptance of a premium therefor the insurer estopped itself to contend that the employer, because of the nature of its business, could not be liable in compensation, then that is an end of the entire matter so we should first consider that contention, which is in the nature of a plea of estoppel. In the first place, it should be noted that in the policy there is no clause or stipulation which in any sense imposes on the insurer any liability other or greater than that which by law could be imposed upon the employer. The policy is simply an agreement that if the employer becomes liable in compensation to an employee, or to his dependents, the insurer will assume that liability. It is true that it does contain a stipulation that the insurer will make payment directly to the employee or to his dependents and that the employee or his dependents may sue the insurer directly and without the necessity of making the employer a defendant. But this stipulation results from the law which gives these rights where there is a policy and which provides that though no insurance need be obtained by the employer, if it is secured, the insurer must make itself liable directly to the employees provided there is liability in the employer. These stipulations do not in any way nor does the law in any way create against the insurer a cause of action where none exists against the employer. And we know of no reason which would justify the view that the acceptance of a premium operates as an estoppel and prevents the insurer from contending that there can be no liability. It may well be that the nature of a business is such that its operator and the insurer may both feel reasonably certain that it is not within the contemplation of the workmen's compensation statute, and yet that there is a possibility that the courts may differ from them if and when a claim in compensation arises. Why, under such circumstances should the employer not be permitted to make certain of his own protection by purchasing insurance without, by so doing, cutting off from the insurer the right to make the defense which both think is perfectly sound; that the employment is not hazardous? The statute itself contemplates that no such estoppel shall result for it provides that even the furnishing of medical service or the making of payments by the employer or by the insurer shall not constitute an admission of liability: 'Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Act.' Sec. 4408, Par. 5, p. 384, Dart's Louisiana General Statutes, Vol. 3, Act No. 20 of 1914, § 18 subd. 5, as amended by Act No. 85 of 1926.
"It will be noted that there is no limitation in this provision. Even after the furnishing of medical services or even after the making of a payment the employer or the insurer may still set up as a defense any contention; even that, because of the nature of the employer's business, the employer is not within the contemplation of the statute. In Benjamin v. Standard Accident Insurance Co. of Detroit, 152 La. 874, 94 So. 428, 429, the Supreme Court expressed the view that the issuance of a policy does not make the insurer liable unless the employer could have been held. That was a suit under this statute it was held that the business of that employer was not hazardous. The court said: '* * * The reason plaintiff cannot recover under the Workmen's Compensation Act is that the employment was not dangerous, and that there was no agreement in writing that the parties should come under the act. * * *'
"But on behalf of plaintiff it was contended that this defense should not be available to the insurer since the insurer had issud a policy of workmen's compensation insurance. The court said: '* * * but from that fact does not result in favor of plaintiff a right of action under the Workmen's Compensation Act, Plaintiff had no right of action under the act against the employer, and has none against the surety of the employer.'
"See also Rutland v. General Accident Fire Life Assur. Corp. [La. App.] 200 So. 486, 488, in which our brothers of the First Circuit said: '* * * there only remains *Page 847 
now the question as to plaintiff's right of action against the defendant, insurance company, Gillespie's surety under the contract of insurance. That question might be the source of further controversy in the case were it not for the fact that the Supreme Court has already specifically held that where an employee has no right of action under the Statute against the employer, he has none against the employer's surety. This ruling was made in the case of Benjamin v. Standard Accident Insurance Co., 152 La. 874, 94 So. 428. * * *'
"There is then no estoppel and we pass on to consider whether the employer's business is within the coverage of the compensation statutes. * * *"
[4] (3) Plaintiff contends that he "is entitled to the liberal construction consistently given the Compensation Statute by our courts."
This contention needs no answer other than that plaintiffs in compensation suits, while not held to the strict rules of pleadings and practice, must, nevertheless, prove their case to a legal certainty before they are entitled to judgment.
(4) Plaintiff contends that the business and employment of the Dayton Seed and Feed Store came within the purview of the Compensation Act because motor-driven vehicles were used in the operation of the business, which rendered it hazardous.
The evidence in the case is to the effect that the feed obtained by the Dayton Seed and Feed Store was hauled by one William F. Cobb, who was engaged in the business of general hauling for the public. He would haul this feed from the railroad station out of the box car to the place of business of the defendant company on the Plank Road at a charge of 5¢ per sack, which charge was raised to 7¢, then 8¢ and finally to 10¢ a sack of 100 pounds. This feed was unloaded from Cobb's truck by labor employed solely by Cobb. Cobb testified that he knew Isaac Fields, that he never worked on his truck and never did take anything out of the trucks; that he was an independent contractor and that the defendant company exercised no control over him.
It was further proven that there was no machinery of any kind used in connection with the business, nor did the Dayton Seed and Feed Store own any motor vehicle, nor did it use or operate one in connection with its feed business.
Plaintiff contends that while the Dayton Seed and Feed Store did not own or operate any automobile in its business, that all of its feed was sold directly to customers who brought their own motor vehicles to its place of business where the feed they purchased was loaded and delivered into the customers' trucks by Isaac Fields and that this constituted the use of a motor vehicle in the operation of the business as contemplated by the Compensation Act. The business of the Dayton Seed and Feed Store was not of itself hazardous and is in the same category as a grocery business which has been held by the Courts to be nonhazardous and not covered by the Act. Rester v. Community Stores, Inc., La. App., First Circuit, 1936, 169 So. 183.
[5] There is no doubt but that our Compensation Law is applicable to any business which owns or operates in connection with its business or as a necessary part thereof, any motor vehicles. In all of the cases cited by counsel for plaintiff, the employer either owned and operated, or borrowed and operated, or used and controlled the motor vehicle'or any other dangerous instrumentality in connection with its business. The act has no application unless the trade, business, or occupation of the employer places him under it.
[6] In the case at bar, the Dayton Seed and Feed Store did not own, operate nor control the motor vehicles of its customers who bought feed from it and into which motor vehicles the plaintiff Isaac Fields loaded the feed. The mere fact that his duties required him to come in contact with a motor vehicle of a third party over which his employer had no control, did not own, operate or use in the sense of controlling same in connection with his business, would not convert this phase of the Dayton Seed and Feed Store business from non-hazardous to hazardous.
Therefore, the Compensation Law does not apply to the business of selling feed and seed at retail any more than it would apply to an ordinary grocery store, as it is not *Page 848 
specially named in the act, nor has there been any agreement to come under the Act, nor have the Courts determined in advance that the retail feed and seed business is of a hazardous nature under the facts in this case.
In view of the above, it is not necessary to decide whether or not plaintiff suffered a hernia and as a result of his operation is still unable to perform the duties required of him on the date of his injury.
It is therefore ordered that the Judgment of the District Court be affirmed and Plaintiff's suit dismissed at Plaintiff's costs.