McCALEB, Justice.
 

 This is a suit for workmen’s compensation. Plaintiff was employed as a laborer by Mrs. Charles J. Hebert, who operates a retail feed and seed business in the city of Baton Rouge under the name of Dayton Feed and Seed Store. Plaintiff’s duties-were to keep -the store clean and load sacks-of feed on the cars or trucks of customers of the store. Pie claims that he suffered a hernia on May 6, 1946, when he picked up a sack of feed to load it on a one-half ton truck; that an unsuccessful operation was performed and that,- as a consequence, he is totally permanently disabled to do work of a -reasonable character. He joined, as defendants, his employer and her liability insurance carrier praying for judgment in solido for 400 weeks compensation less a credit of 18 weeks previously paid by defendants.
 

 Defendants deny liability for compensation asserting that Mrs. Hebert is not engaged in a hazardous business, as defined by paragraph 2 of Section 1 of the Employer’s Liability Act, Act No. 20 of 1914, as amended; further that plaintiff did not suffer a hernia in the course of his employment and that, if he did, he is not disabled as a result thereof.
 

 The trial court sustained both of these defenses. Plaintiff appealed to the Court of Appeal, First Circuit, where the judgment was affirmed, 36 So.2d 843, the court being of the opinion that the accident was not compensable because his employer was not engaged in a hazardous occupation. We granted certiorari.
 

 After a full consideration of the case in this court, we are of the opinion that the judgment of the Court of Appeal is correct. A retail -seed and feed store is.
 
 *945
 
 admittedly not a business designated as hazardous under paragraph 2 of Sections 1 of the Employer’s Liability Act wherein various trades and occupations, considered to be dangerous, are specifically enumerated. Accordingly, there can be no liability for compensation
 
 [1]
 
 unless plaintiff is able to show that there are certain hazardous features of the business, with which he has been brought in contact, or that the business has been previously declared to be hazardous, either by agreement or judicially, under paragraph 3 of Section 1 or that, if not hazardous, the parties have contracted in writing to be governed by the act as provided in paragraph 4 of Section 1.
 

 In an effort to bring the business within the purview of the statute, counsel for plaintiff proclaims that it involves the operation of a warehouse (denominated as a hazardous enterprise under paragraph 2(a) of Section 1) because the feed is stored in sacks on the premises and that, since plaintiff had to lift and carry the heavy (maximum 100 lbs.) sacks, he is entitled to compensation.
 

 There is no merit in the contention. The -storing of goods on property for purposes of sale and distribution does not constitute the operation of a warehouse. It is only where a person is engaged in the business of storing goods for profit that he can be classed as a “warehouseman” and the structure in which the goods are stored as a “warehouse”. Act No. 53 of 1920; Caldwell v. George Sproull Co., La.App., 164 So. 651.
 

 The next proposition advanced by counsel is that Mrs. Hebert conducts a hazardous business in that it entails the lifting and loading of heavy sacks of feed, and that, this being so, liability ensues by operation of paragraph 3 of Section 1 because it was impliedly agreed that -the employment was covered by the act. And, pointing to the fact that Mrs-. Hebert had taken out a compensation insurance policy; that plaintiff had been named as one of the employees covered therein and that the wages earned by him were included in calculating the amount of premiums thereon, counsel declare that this evidences an implied agreement between plaintiff and his -employer.
 

 On the other hand, counsel for defendants assert that an implied agreement will not suffice; that the agreement must be express and in writing, Benjamin v. Standard Acc. Ins. Co. of Detroit, 152 La. 874, 94 So. 428, and that, in any event, the fact that the employer took out a policy of workmen’s compensation insurance does not authorize a holding that there was an
 
 *947
 
 implied agreement between the parties for payment of compensation.
 

 We do not coincide with the view of defense counsel that paragraph 3 of Section 1 of the act makes mandatory a written agreement by the parties that the employer’s business is hazardous. But- we think that the agreement must be express in order to be effective. Paragraph 3 of Section 1 declares: “3. If there be or arise any hazardous trade, business or occupation or work other than these herein-above enumerated, it
 
 shall
 
 come under the provisions of this act. The question of whether or not a trade, business or occupation not named herein is hazardous may be determined
 
 by agreement between the employer and employee
 
 or by submission at the instance of either employer or employee to the Judge of the Court which shall have jurisdiction over the employer in a civil case. The decision of the Court shall not be retroactive in its effect.” (Emphasis ours.)
 

 There cannot be any doubt as to the meaning of the foregoing provision. It is set forth that the employer and employee may, by agreement, determine that the business of the employer is hazardous. There is no requirement that the understanding be in writing. That the lawmakers intended that an oral agreement would be sufficient under paragraph 3 is made quite plain by a consideration of the succeeding paragraph, numbered 4. That paragraph provides in substance that, even though the employer is engaged in a trade not specified under paragraph 2 or one that has-not been determined to be hazardous “under the operation of paragraph 3”, the employer and employee may, nevertheless, “voluntarily contract in writing to come under the benefit and protection of the provisions of this act * * * ”. This, of course, simply means that an employer not engaged in a hazardous business may contract with his employee that they will be governed by the act. But the agreement, to be valid, must be in writing. This is the holding of the court in Benjamin v. Standard Acc. Ins. Co. of Detroit, supra. However, if the parties have expressly agreed that the business is hazardous, paragraph 3 is applicable and the agreement will be given effect even though it is not in writing.
 

 But there must be an agreement between the parties. In the instant case, there is none. The fact that the employer took out a policy of compensation insurance for her own protection (and presumably also for her employee) cannot be converted into an agreement by implication. Plaintiff was not a party thereto and was not bound thereby. If he had been injured' as a result of the negligence of his employer, no court would refuse him damages, Article 2315, C.C., because his employer saw fit to take out compensation insurance.
 

 Counsel for plaintiff further assert that the defendants are estopped to deny that his injuries are compensable in view of the
 
 *949
 
 issuance of the policy of insurance, treatment voluntarily given him by the insurer after the accident and payment of compensation for 18 weeks.
 

 The point is without substance. Paragraph 5 of Section 18 of the statute, as amended by Act No. 85 of 1926, specifically provides that neither the furnishing of medical services nor payments by the employer or his insurance carrier “shall constitute an admission of liability for compensation under this act”. See also Foret v. Paul Zibilich Co., Inc., 18 La.App. 363, 137 So. 366; Franz v. Sun Indemnity Co., La.App., 7 So.2d 636 and Benjamin v. Standard Acc. Ins. Co. of Detroit, supra.
 

 Finally, counsel contend that the business has hazardous features as it involves the loading of sacks of feed upon motor vehicles or trucks of customers of the store. The theory of this argument is that the customers’ use of motor vehicles to haul away their purchases forms an integral part of Mrs. Hebert’s business because the nature of her sales (heavy sacks of feed) is such that she anticipates the use of motor vehicles in making deliveries and that she employed plaintiff for the specific purpose of assisting in this feature of her trade.
 

 This proposition is untenable as it rests on the faulty assumption that the use of motor vehicles by the store’s customers is a part of the employer’s business. Mrs. Hebert neither owns nor does she lease or otherwise use motor vehicles in making deliveries; the feed, seed and other commodities sold by her are delivered at the store. As a- convenience to her customers, she hired plaintiff to load their purchases on their vehicles.
 

 The judgment of the Court of Appeal is affirmed.
 

 [1]
 

 . It is well settled that it is the nature • of the employer’s business and not the particular work done by the employee which is the determinative factor in suits for compensation. Paragraph 2 of Section 1 of Act No. 20 of 1914; Shipp v. Bordelon, 152 La. 795, 94 So. 399; Kern v. Southport Mill, 174 La. 432, 141 So. 19 and Hogan v. T. J. Moss Tie Co., 210 La. 362, 27 So.2d 131.