Carey WESTON, Plaintiff,

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant.**

Civ. A. No. 10620.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 28, 1962.

Sims & Mack, Robert J. Mack, Hammond, La., for Carey Weston.

Adams & Reese, John T. Cooper, New Orleans, La., for Aetna Casualty & Surety Co.

R. B. Walden, Baton Rouge, La., for State Hospital Board, Baton Rouge, La.

AINSWORTH, District Judge.

Plaintiff, alleging total and permanent disability, has brought suit for workmen's compensation and medical benefits against the insurer of Frank L. Richardson under a policy of compensation insurance covering all of his operations within Louisiana and Mississippi.

On January 28, 1960, plaintiff was working as a laborer engaged in cutting

pulpwood and transporting it from timberland owned by Houston Stafford to the loading ramp of Richardson, in a truck owned by Lee Andrews, an elderly, illiterate, Negro, who for many years has worked in the pulpwood industry, cutting and hauling logs and pulpwood and performing related duties. While driving the truck plaintiff drove into a roadside ditch on the property of Stafford, causing a container of gasoline, which was on the rack above the driver's seat, to fall across the hood of the truck, resulting in an explosion and fire. Plaintiff suffered severe burns over a great portion of his body.

Plaintiff contends that Lee Andrews, the owner of the truck which he was driving, is a subcontractor of Richardson, within the purview of Section 1061 of the Louisiana Workmen's Compensation Statute (LSA–R.S. 23:1021 et seq.); that Lee Andrews' work was incidental to the business of Richardson; therefore, that as a member of the working crew of Andrews, plaintiff is entitled to compensation from Richardson's insurer. Defendant resists liability, contending that the legal relationship between Andrews and Richardson is that of a bona fide seller and purchaser of pulpwood rather than contractor and subcontractor.

The evidence shows that for many years prior to the date of the accident Lee Andrews regularly supplied wood to Richardson's ramp. Richardson has certain contracts with Crown Zellerbach Corporation under which he must deliver all pulpwood cut on Crown Zellerbach lands to the latter's wood yard. During the term of these contracts Richardson is obligated to deliver a certain amount of pulpwood to the Crown Zellerbach plant at stipulated times and for a set price. Richardson also has other wood operations in addition to the Crown Zellerbach activities. Despite these operations Richardson insisted repeatedly that he had no employees though he finally admitted on cross-examination the employment of a supervising foreman for the Crown Zellerbach operations. The

Claims Supervisor of defendant insurance company testified that since January 1, 1960, he had adjusted more than 50 claims resulting from employee injuries occurring in woodcutting operations in which Richardson was the employer. An accident form supplied by defendant insurance company to Richardson for the purpose of reporting injuries was filled out and furnished defendant as to the present accident and injuries to plaintiff. It was signed by Richardson's son, and shows the name of the employer of plaintiff as F. L. Richardson.

The evidence also shows that the work of Lee Andrews and his helpers is controlled to a great extent by Richardson; the men are frequently directed by Richardson as to time, place and manner of the cutting, loading and delivery of wood. Richardson likewise directs the transfer of men from woodcutting operations on the Crown Zellerbach land to privately owned land.

There is testimony to the effect that a short time prior to the accident Houston Stafford, on whose land the injury occurred, visited Richardson's office and personally offered to sell Richardson the pulpwood from his land. Thereupon Richardson agreed with Stafford to arrange to send Lee Andrews to meet Stafford in order to cut and deliver the wood to Richardson. Richardson also agreed with Stafford that he would hold the "stumpage" (i. e., the amount due the landowner for his wood) and Stafford could come to him and pick it up after the wood was delivered.

We believe that the facts show a vendor-vendee relationship between Stafford and Richardson rather than between Stafford and Andrews. Andrews was therefore hired by Richardson as a subcontractor.

It is our opinion that the necessary elements of a sale were present at the time of the meeting between Stafford and Richardson and that the sale was perfected at that time. (See LSA–Revised Civil Code Articles 2456 and 2439.) Thereupon Richardson became the owner of the wood sold to him by Stafford,

which was subsequently cut and hauled by Andrews and his employees, of which plaintiff was one. Although Andrews testified that he could "sell" the wood which he cut and hauled to anyone he considered he had a primary obligation to Mr. Richardson, because of their long-standing relationship and because Richardson had always been fair with him. Andrews was financially obligated to Richardson. Whether or not Andrews could on occasions "sell" wood to someone other than Richardson is immaterial. The pertinent issue is the relationship of the various parties under the circumstances of the particular transaction which gave rise to the injuries suffered by plaintiff. It is extremely doubtful that Stafford would have sold his wood to Andrews. Stafford looked to Richardson for performance and particularly for payment for his "stumpage."

■ In an attempt to show that Andrews was an independent contractor whose only relationship to Richardson was that of vendor, defendant relies on Andrews' testimony that he owns two trucks; that on the date of the accident he was using his trucks to deliver the pulpwood cut from Stafford's property to the Richardson ramp. Andrews also testified that he hired and paid plaintiff. However, the working relationship between plaintiff and Andrews is immaterial if in fact Andrews was performing the work of a subcontractor working for a principal (Richardson). The pertinent part of LSA–Revised Statutes 23:1061 reads as follows:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any com-pensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him * * *."

The question of whether the duties of Andrews and his helpers constitutes any part of the work undertaken by Richardson and whether the Richardson-Stafford transaction was a part of Richardson's trade, business, or occupation, must be determined by the nature of the principal's business and the duties of the subcontractor. Richardson is admittedly in the pulpwood business; he has for many years been engaged in contracting for purchasing, selling, cutting and delivering timber, particularly under contracts with Crown Zellerbach. The pulpwood business is his means of livelihood. Andrews' operations consist in cutting and hauling pulpwood which he has done for many years in connection with Richardson's operations. The duties of Andrews are an integral part of Richardson's business and inseparable from it. In Belaire v. Elder, 49 So.2d 508, La. App., 1 Cir. (1950), it was held that where defendant was in the lumber business, and a contractor cut and delivered timber to the defendant company in a rough state, under the direction and control of defendant, after which defendant company dressed the lumber and sold it to retail outlets, the contract was necessary and incidental to the business of defendant company so as to place plaintiff, an employee of the contractor, under the provisions of the Louisiana Workmen's Compensation Act. In Thibodaux v. Sun Oil Company, 40 So.2d 761, La. App., 1 Cir. (1949), the court said:

"It is now well settled that if the work contracted for is within the 'trade, business [and] occupation' of defendant, or within the category of operations, it may not be contracted for except under the conditions imposed by Section 6 of the Compensation Act." (Section 6 of the Act is now incorporated in LSA–R.S. 23:1061.)

Under LSA–Revised Statutes 23:1061, it is well settled that a direct contractual

relationship between a principal and a subcontractor's employee is not necessary to effectuate the provisions of that section of the statute. Wysinger v. Godfrey, 86 So.2d 597, La.App., 2 Cir. (1956); Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311 (1935); Seabury v. Arkansas Natural Gas Corp., 171 La. 199, 130 So. 1 (1930); Helton v. Tall Timber Lumber Co., 148 La. 180, 86 So. 729 (1920).

Other facts show the actual status of the parties here. The insurer paid $1,000 in settlement of a death claim which arose from the same accident in which plaintiff was injured, the decedent having been employed in the identical manner and under the same circumstances as plaintiff. Though the Louisiana statute, LSA–R.S. 23:1204, and jurisprudence, Fields v. General Casualty Co., 216 La. 940, 45 So.2d 85 (1950); Rogers v. Weldon, 85 So.2d 379, La.App., 1 Cir. (1956), and cases cited therein, say that the payment of compensation insurance by an employer or his insurer does not in itself constitute an admission of liability for compensation under the Louisiana Workmen's Compensation Act, such an action is a factor to be considered in weighing the evidence. The fact that Richardson retained the "stumpage" and remitted it direct to Stafford is not in itself conclusive as to their relationship. Cerie v. Malone, 125 So.2d 254, La.App., 3 Cir. (1960); Taylor v. Employers Mutual Liability Ins. Co., 220 La. 955, 58 So.2d 206 (1952). But it does create an inference of a buyer-seller relationship between Richardson and Stafford rather than between Stafford and Andrews. We are convinced that Richardson would not have paid Stafford direct from the retained "stumpage" had this not been true.

Defendant's policy of insurance, under which numerous settlements have been made to injured workers showing Richardson as the employer, covers the case here. It reads in part as follows:

"All of the provisions of the workmen's compensation law shall be and remain a part of this policy as fully and completely as if written herein, so far as they apply to compensation and other benefits provided by this policy."

LSA–R.S. 23:1162 reads in part as follows:

"No policy of insurance against liability under this Chapter shall be made unless the policy covers the entire liability of the employer * * *."

■ Defendant has cited cases in which claims for compensation were defeated because of the existence of a buyer-seller relationship between claimant and defendant, under circumstances similar to the facts in this case. However, the relationship of one party to another is a question of fact to be determined by the particular circumstances in each case and each case must be decided on its own separate facts. We are convinced here that the alleged "sale" from Andrews to Richardson of the Stafford wood was a mere subterfuge to avoid the express provisions of LSA–R.S. 23:1061.

Lee Andrews was interposed as a middleman between Richardson and Stafford, the actual buyer and seller, in an attempt to circumvent the liability imposed by Section 1061 of the Louisiana Workmen's Compensation Act. Because of the hazardous nature of the lumber industry, compensation insurance rates are very high. The insurer readjusts the insurance premium retrospectively on the experience basis of the insured. It is obviously, therefore, to the employer's advantage to avoid liability for compensation. The ostensible purchaser, the intermediary—usually uneducated and insolvent—supposedly obtains ownership of the timber from the seller, and in turn "sells" it to the actual purchaser. This practice which has grown up in the lumber industry is abhorrent to the spirit of the compensation law and we cannot countenance it here.

In Malone's "Louisiana Workmen's Compensation Law and Practice," § 123, p. 42 (1962 pocket parts), in discussing the so-called sale and resale practice

in the lumber industry, Professor Malone makes the following comment:

"In recent years there is increasing evidence that lumbering transactions such as described above are coming to be regarded in court with a more skeptical eye. The most recent example is Jones v. Hennessy (1957) 232 La. 786, 95 So.2d 312, reversing (La.App., 1st Cir., 1956) 85 So.2d 693. Hennessy, a lumber buyer, induced the deceased, its own former employee, an illiterate Negro, to move to a new locality and to work for an intermediary who presumably was cutting timber for sale to Hennessy. The latter provided quarters and a line of credit for living expenses for the deceased during much of this operation. It was not claimed, however, that deceased was a direct employee of Hennessy. The court, in concluding that the intermediary was not a seller to Hennessy within the meaning of R.S. 23:1061, relied upon the fact that the intermediary had purchased a sawmill from Hennessy on credit. The terms of the purchase arrangement for the mill were such that as a practical result the intermediary was compelled to sell timber exclusively to Hennessy at the risk of losing his mill. It is interesting to note that previous decisions of the courts of appeal, in holding that the intermediary was in fact a seller to defendant within the meaning of the statute, have ignored the fact that an exclusive resale arrangement existed. From the opinion in Jones v. Hennessy it is difficult to determine whether the court, in allowing compensation, was prompted to do so by the exclusive character of the sale arrangement, or whether it was influenced by the fact that Hennessy had interested himself in procuring the services of the deceased for the intermediary, and had assisted in financing the deceased. The importance of the case lies in the fact that the result reached suggests possibly that resale arrangements of this type may be more critically scrutinized in the future.

"The tendency described above has continued. The latest instance is Stevens v. Mitchell, (1958) 234 La. 977, 102 So.2d 237, decided during the 1958 term. One Tullos negotiated with Griffin for the purchase of standing trees. The sale was effected through Mitchell, who had an exclusive resale agreement with Tullos. In this case payments to Griffin were actually made by Mitchell (presumably with money furnished by Tullos). Stevens, one of Mitchell's workers, was killed and his widow secured compensation from Tullos under LSA-R.S. 23:1061 despite the defendant's claim that Mitchell was a seller. The court emphasized that Mitchell was obliged to deliver the logs to Tullos' mill and that all arrangements had to meet with the approval of Tullos. These features, however, have been present in several situations previously litigated in which the courts had nevertheless approved the transaction a bona fide sale and had denied compensation."

Although the facts in this case are not identical to those in the Jones v. Hennessy and Stevens v. Mitchell cases discussed by Professor Malone, there is striking similarity. Because of the control exerted by Richardson over Andrews and because of the obligations, financial and otherwise, which Andrews feels he owes to Richardson, for all practical purposes an exclusive arrangement existed between the two as to timber cut from private lands. We are convinced that the relationship between Richardson and Andrews was that of principal and contractor; as an employee of the contractor, Weston is clearly entitled to recover compensation under the provisions of LSA-Revised Statutes 23:1061.

■ Plaintiff has failed to prove that he is permanently, totally disabled. It

is not shown that he is unable to do work of any reasonable character.

Dr. Samuel Karlin testified that in his opinion plaintiff is capable of doing laborious work, including lifting, carrying and "pulpwood work." However, he further testified that there is a minimal amount of disability and discomfort resulting from contractures that plaintiff has on his two little fingers and the fourth finger of his right hand. After re-examining plaintiff in the presence of the court, Dr. Karlin was of the opinion that there was an over-all disability of approximately 10 per cent. Furthermore, there was testimony by the owner of the Gulf Service Station in New Orleans that plaintiff was employed by him in February, March and April of 1962 as an attendant and porter. His duties consisted of washing automobiles, repairing tires and attending pumps and other related duties.

Plaintiff is entitled to compensation based on 65 per cent of his average weekly earnings of $31.20 (i. e. $20.28 per week) for total temporary disability for 104 weeks, the period between the injury and his employment as a service station attendant, and further compensation on the same basis for 100 weeks because of his permanent disfigurement and the impairment to the usefulness of plaintiff's hands. LSA–R.S. 23:1221(4) (p).

■ The circumstances do not warrant an award of penalties and attorney's fees.

Plaintiff has also claimed that he is entitled to judgment in the sum of $1,269 for medical services rendered to him by the Washington-St. Tammany Charity Hospital. Since the trial of the case a petition of intervention, under the provisions of LSA–R.S. 46:11.1, has been filed by the State Hospital Board of the State of Louisiana on behalf of the Washington-St. Tammany Charity Hospital seeking judgment in the sum of $1,269 for medical services rendered. Intervenor is entitled to judgment in this sum.

Fees of counsel for plaintiff shall be paid out of the judgment rendered herein in accordance with LSA–R.S. 23:1141; that is, 20 per cent of the award herein made.

Rights of plaintiff for future medical expenses in connection with his injury sustained herein are reserved.

Judgment shall be entered for compensation to plaintiff and intervenor as hereinabove set forth, and for all costs.