HOOD, Judge.
This is a workmen’s compensation suit instituted by Joseph Raymond Fontenot against his former employer, J. Weingar-ten, Inc. Judgment was rendered by the' trial court in favor of plaintiff, awarding him compensation benefits based on total and permanent disability. Defendant has appealed.
One of the important issues presented is whether plaintiff’s employment was hazardous within the meaning of the Workmen’s Compensation Act, and thus whether he is entitled to benefits as provided in that act because of an injury allegedly sustained by him during the course of his employment.
Fontenot sustained a back injury on June 2, 1968, while he was working as a “stocker” or “stockman” for defendant. The accident occurred in a large retail grocery store which was owned and operated by defendant Weingarten in Lake Charles. Plaintiff and a co-worker were stacking some merchandise on the floor of the store for display purposes, and he sustained a straining-type injury to his back as he was lifting a carton of canned goods.
Plaintiff had worked as a stocker for defendant in that store for about ten months before this accident occurred. His principal duties were to keep the shelves on several aisles in the store stocked with merchandise. Most of the goods which were placed on the shelves were obtained from a storeroom in the rear of the store, and they were transported to the proper shelves on handcarts or flats which were not motorized or powered in any way. It was plaintiff’s job to mark the prices on these goods and then to place them on the shelves.
Although Fontenot’s principal duties were to mark merchandise and restock shelves, he also was required to assist in unloading large van-type trucks owned by defendant and used by it in delivering merchandise to its various stores. Some of the merchandise was kept in a storeroom located in the rear of the store and in a cold storage or freezer room maintained by defendant in the store building. Plaintiff frequently entered this storeroom and the cold storage room. He also was required at various times to serve as a cashier or *145 checker in the front of the store, and while doing so he used a cash register and an electrically-driven conveyer belt located near the register. On at least two occasions while working for defendant he used his own automobile to deliver items of merchandise to other stores.
The operation of a retail grocery store is not listed as a hazardous business in LSA-R.S. 23:1035, and our jurisprudence is settled that the operation of such a store is not hazardous per se. Boggs v. Great Atlantic & Pacific Tea Company, 125 So.2d 419 (La.App. 3 Cir. 1960); Talbot v. Trinity Universal Insurance Company, 99 So.2d 811 (La.App. 1 Cir. 1957); Le Blanc v. National Food Stores of Louisiana, Inc., 118 So.2d 500 (La.App. 1 Cir. 1960); Pinchera v. Great Atlantic & Pacific Tea Company, 206 So.2d 793 (La.App. 2 Cir. 1968).
Although the main business of the employer is neither hazardous per se, nor declared to be hazardous by the compensation act, an employee may be considered to come under the act in some circumstances where hazardous appliances or equipment are used in the business and the employee, as an integral part of his duties, is regularly exposed to and is frequently brought in contact with the hazardous features of the business. Mercer v. Sears, Roebuck & Company, 155 So.2d 112 (La.App. 3 Cir. 1963).
In the instant suit, the trial judge concluded that Fontenot, as an integral part of his duties, was regularly exposed to and frequently came in contact with hazardous features of the business of his employer, and that he thus was entitled to recover under the compensation act, even though he was injured while performing non-hazardous duties. Defendant contends that the trial court erred in reaching that conclusion.
The evidence shows that Weingarten maintained and operated a number of van-type trucks which it used to deliver merchandise to its various stores. Almost daily some of these trucks were brought to the rear of the store where plaintiff worked, and plaintiff assisted in unloading them. He often went inside the vans while helping in these unloading operations. Usually the tractor was separated from the van after the latter was parked, and when that occurred plaintiff did not work around any machinery as he assisted in unloading the vans. Occasionally, however, the tractor remained attached to the van when fresh produce was delivered and while the van was being unloaded. Plaintiff did not ride in trucks at any time, and he had nothing to do with the operation or repair of the motors or engines in those vehicles.
A device called a “roller” was used by plaintiff and his co-workers in unloading the vans. This roller, or conveyer, consisting of an aluminum frame with a number of small rollers on it, was constructed in such a way that heavy cartons of merchandise could slide or roll easily over the length of the frame. It was not motorized or powered in any way.
Plaintiff contends that he was performing duties of a hazardous nature since he was required to work around trucks and to use the above-described metal rollers in the performance of his duties.
In Boggs v. Great Atlantic & Pacific Tea Company, supra, the decedent’s duties were similar to those of the plaintiff in the instant suit. There, Boggs regularly unloaded trucks, using metal rollers in doing so and using hand trucks to transport the goods into the store. He also occasionally was required to take groceries out of the store to the automobiles of customers. We held that his contact with motor vehicles under those circumstances, and his use of metal rollers in unloading trucks, were not sufficient to make his employment hazardous, and that he thus was not subject to the provisions of the Workmen’s Compensation Act.
Our brothers of the First Circuit Court of Appeal held in Allen v. Yantis, 196 So. *146 530 (La.App. 1 Cir. 1940), that an employee on a farm who regularly assisted in loading and unloading a truck and rode in it occasionally, but did not drive it, was not engaged in a hazardous feature of the employment. In so holding, the court said:
“ * * * the farmer who regularly uses a motortruck in his farming operations may be said to be engaged in a hazardous business only as to the driver or operator of the truck, and not as to those who load and unload that truck with cotton, corn, potatoes and other farm produce. * * *
“For us, we can see no more hazard involved in loading and unloading, and occasionally riding on for that purpose, a farm truck, than in loading and unloading and riding on a wagon drawn by horses or mules. In fact, there would be less danger in loading and unloading a truck standing with the gasoline cut off than in loading or unloading a wagon with one or more fractious or kicking mules or horses hitched to it. Some of us brought up on the farm are familiar with the dangers incident to the latter operation. Of course, this does not apply to the driver or operator of the mo-tortruck whose duties are declared by the law itself to be hazardous.”
In Horton v. Western Union Telegraph Co., 200 So. 44 (La.App. 2 Cir. 1941), it was held that an employee who used a bicycle to deliver telegrams, and thus was exposed to the dangers and hazards of motor vehicle traffic on streets and highways, was not engaged in a hazardous feature of an otherwise non-hazardous business.
Our appellate courts have held consistently that an employee in a non-hazardous business, such as a grocery store, will not be considered as being engaged in a hazardous feature of that business, and thus subject to the provisions of the compensation act, simply because he loads and unloads purchases into the automobiles of customers. Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85 (1950); Hammer v. Lazarone, 87 So.2d 765 (La.App. 2 Cir. 1956).
The above-cited cases indicate the plaintiff in the instant suit should not be considered as having performed hazardous duties simply because he assisted in loading and unloading trucks. There are other cases, however, which tend to show that he should. See Allen v. Travelers Insurance Company, 124 So.2d 367 (La.App. 1 Cir. 1960); Richardson v. Crescent Forwarding & Transportation Co., 17 La.App. 428, 135 So. 688 (La.App.Orls.1931); Snear v. Eiserloh, 144 So. 265 (La.App.Orls.1932). We, however, distinguish each of the cited cases from the instant suit. In the Richardson and the Snear cases the evidence showed that the employee in each instance was required to ride in the trucks, as well as to unload them. In Allen v. Travelers Insurance Company, supra, the case was remanded for trial because there was no showing in the petition as to whether plaintiff was required to ride in the vehicles or to work about the machinery.
In our opinion, the unloading of merchandise from a parked, van-type truck is no more hazardous than moving the merchandise from one part of the store to another. In the instant suit, plaintiff did not work around or come in contact with machinery or moving vehicles as he unloaded the trucks. We do not feel that the mere fact that the van had once been attached to a tractor, or was still attached to it while parked at the grocery store, was sufficient to classify the job of unloading the van as being hazardous.
Plaintiff contends that the defendant operates a “warehouse” in connection with the store in which he was employed, and that his employment thus is governed by the Workmen’s Compensation Act, since the operation of a “warehouse” is specifically listed in LSA-R.S. 23:1035 as being a hazardous occupation.
The evidence shows that defendant maintained a “storeroom,” or a private *147 storage facility, in the rear of its grocery store, and that this storeroom was used exclusively to house items which were sold through that particular retail outlet operated by defendant.
The maintenance of a storeroom in connection with the operation of a grocery store does not constitute the operation of a “warehouse,” as that term is used in LSA-R.S. 23:1035. The word “warehouse,” as used therein, has been construed to mean a warehouse operated for profit, wherein the goods of third persons are stored for profit. Caldwell v. George Sproull Co., 164 So. 651 (La.App. 2 Cir. 1935); Wells v. Morgan & Lindsey, Inc., 42 So.2d 282 (La.App. 1 Cir. 1949); Fields v. General Casualty Co. of America, 36 So.2d 843 (La.App. 1 Cir. 1948); and Allen v. Travelers Insurance Co., supra.
Our conclusion is that the operation of the storeroom by defendant in the instant suit does not constitute the operation of a hazardous business, within the meaning of the Workmen’s Compensation Act.
Defendant also maintained a cold-storage room in its grocery store, where dairy products and other foods were stored until used to stock shelves in the store. Plaintiff frequently entered that room to store merchandise or to get items which he needed to restock the shelves. The room was cooled by electrically-operated refrigeration units, and plaintiff contends that he regularly performed hazardous duties in his employment since he frequently came in contact with these electrical devices.
Plaintiff’s duties relating to the cold-storage room were simply to place merchandise in that room or to remove it from the freezer for display in the store. He did not come in contact with any of the compressors or machinery used in cooling the room, and he performed no work on that machinery. We conclude that the duties which he performed in or around this cold-storage room were not hazardous. See Claiborne v. Smith, 2 So.2d 714 (La.App.Orl.1941); Hymel v. Employers Liability Assur. Corp., of Great Britain, 113 So.2d 481 (La.App. 2 Cir. 1959); and Boggs v. Great Atlantic & Pacific Tea Company, supra.
Fontenot testified that on two occasions while he was working for defendant he used his own automobile to deliver merchandise to another store. He argues that he thus was regularly exposed to hazardous features of the business. We feel that this infrequent use of his car is not sufficient to warrant a holding that his employment is governed by the Workmen’s Compensation Act. See Brownfield v. Southern Amusement Co., 196 La. 74, 198 So. 656 (1940).
Plaintiff contends, finally, that he performed hazardous features of his employer’s business while serving as a checker or cashier in the store, in that he operated an electric cash register and an electrically-powered conveyer belt. He takes the position that he performed these duties regularly, and that he frequently came in contact with the above-mentioned electrically operated devices.
The evidence is conflicting as to how much of plaintiff’s working time was spent in serving as a checker or cashier in defendant’s store. We are convinced, however, that he was required to perform the duties of a checker or cashier often enough to justify the conclusion that.he regularly and frequently came in contact with the cash register and the conveyer.
The cash register which he used was powered by a small enclosed electric motor. He operated it simply by punching some keys or buttons located on the front of the device to ring up the amount of each sale. Several girls were regularly employed to serve as checkers or cashiers, and plaintiff was required to work in that capacity only when there was a “rush” in the store. The evidence does not show that he was ever required to repair the register, to change a tape on it or to expose the motor or wiring in any manner.
*148 The counter near the cash register was equipped with two moving rubber conveyer belts. These belts were looped over rollers or pulleys, and two electric motors connected with these pulleys caused each belt to move when the current was applied to the proper motor. The counter-top surface of each belt was about 18 inches wide and four or five feet long. One belt was used to draw the customer’s merchandise toward the cashier, and the other was used to convey the merchandise which had been checked away from the cashier to the front end of the counter where it was bagged and taken by the customer. The first belt was activated or caused to move by a foot switch which was depressed by the cashier with his foot when he wanted to draw the merchandise toward him. The other belt was activated by a hand switch, similar to an electric light wall switch. The cashier turned on that switch with his hand when he wanted to move merchandise on the counter away from him.
The two electric motors which operated these belts were located at opposite ends of the checking counter. The cashier stood near the center of that counter, so he was several feet from either motor while he was checking merchandise. Both motors and all pulleys were completely enclosed, and a person could not come in contact with either of the motors or with any of the pulleys or wiring without first using a screwdriver to remove one of the covering panels. The evidence shows that these panels were removed only by maintenance men, and not by cashiers or stockers.
A metal plate covered the crack or space near the center of the checker’s counter where these two belts came together. Occasionally coins or other small items would slide under that metal plate and drop between the two moving belts. When that occurred, the cashier usually lifted up the metal plate and reached down between the belts and retrieved the coin or other small item. This space between the two belts was about one foot wide. The motor, of course, would not be operating when these items were removed, and no motors, wires or pulleys were exposed at the place where the items dropped.
The test to be applied in determining whether electrically-operated appliances or machinery are hazardous, and thus whether the Workmen’s Compensation Act should apply to a person who regularly uses those devices in otherwise non-hazardous business, is simply whether the employee’s use of or exposure to these devices is such that the risk of a work-connected injury is materially or substantially increased over what it would have been had the employee not been subjected to these hazards. Mercer v. Sears, Roebuck & Company, supra.
It has been held that a motel employee who was regularly exposed to an electric cash register, a vacuum cleaner, air-conditioners, refrigerators, window fans, an electric washing machine, and an electric clothes drier, could not recover workmen’s compensation benefits because the exposure to these appliances did not constitute the performing of hazardous features of the business of her employer. Leleau v. Jacomine, 144 So.2d 921 (La.App. 4 Cir. 1962).
In Harrington v. Franklin’s Stores Corp. of New Iberia, 55 So.2d 647 (La.App. 1 Cir. 1951), the court held that the use of an electric steam iron and a vacuum cleaner was not “any more hazardous than the devices used daily in any modern homes.” A cook in a cafeteria who regularly came in contact with an electric refrigerator, which had an electric motor and compressor outside the box, was held not to be engaged in a hazardous feature of the business. See Claiborne v. Smith, supra. In Honeycutt v. Sears, Roebuck & Company, 146 So.2d 860 (La.App. 3 Cir. 1962), we held that a saleslady in a department store who regularly operated an electric cash register and replaced tapes on the register from time to time was not engaged in a hazardous feature of that business. And, *149 our brothers of the Second Circuit Court of Appeal held in Coleman v. Sears, Roebuck & Company, 83 So.2d 469 (La.App. 2 Cir. 1955), that a department store employee who regularly rode escalators and worked in close proximity to electrically driven accounting machines was not engaged in a hazardous feature of that business. In that case the plaintiff, in fact, was riding on an electrically powered escalator when she was injured.
Plaintiff in the instant suit relies largely on Pinchera v. Great Atlantic & Pacific Tea Company, supra, where an employee in a grocery store was held to be engaged in a hazardous feature of the business because a substantial part of her work entailed the operation of an electrically powered “coffee grinder” and an “electric package sealer.” We distinguish that case from the instant suit, however, because of a difference in the types of electrical devices which were used. In Pinchera, the court did not describe the coffee grinder or the package sealing machine which plaintiff used, and we assume that these machines involved a much greater risk of injury to the operator than did the cash register and the counter top conveyor which was used by plaintiff in the instant suit.
We conclude that the electrical devices used by Fontenot in the instant suit, including a cash register and a conveyor, were not of such a hazardous nature that their use by plaintiff materially or substantially increased the risk or danger of injury to him over what the risk would have been if he had not been regularly exposed to these items. Plaintiff thus was not engaged in a hazardous feature of his employer’s business, and he thus is not entitled to recover benefits as provided in the Workmen’s Compensation Act.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, J. Weingarten, Inc., and against plaintiff, Joseph Raymond Fontenot, rejecting plaintiff’s demands and dismissing this suit at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.

On Application for Rehearing

En Banc. Rehearing denied.
FRUGÉ, J., votes for rehearing.