249 So.2d 886

**Joseph Raymond FONTENOT**

**v.**

**J. WEINGARTEN, INC.**

**No. 50455.**

May 4, 1971.

Concurring Opinion June 3, 1971.

Dissenting Opinions May 5 and 12, 1971.

Rehearing Denied June 28, 1971.

Donald Soileau, Donald Soileau's Law Office, Mamou, for plaintiff-appellant.

Plauche, Sanders, Smith & Hebert, Allen L. Smith, Jr., Lake Charles, for defendant-appellee.

McCALEB, Chief Justice.

Joseph Raymond Fontenot is suing to recover workmen's compensation benefits for injuries received by him in the course of his employment with J. Weingarten, Inc., owner and operator of a large grocery store in Lake Charles, Louisiana, for a straining-type injury to his back, sustained while preparing a display of canned goods, a nonhazardous feature of defendant's business.

The trial judge granted plaintiff compensation for $35.00 a week for a period not to exceed 400 weeks. On appeal the Court of Appeal for the Third Circuit reversed, holding that the business of operating a grocery store is not hazardous, that plaintiff was not exposed to any hazardous features of such business, and that, consequently, he was not entitled to compensation benefits.[1] 232 So.2d 143. We granted certiorari, 255 La. 807, 233 So.2d 248.

The record discloses that, in addition to owning and operating the large supermarket where the accident occurred, the defendant has other similar stores in the locality, and, in connection with these, it uses a number of van-type trucks necessary for the delivery of merchandise to these grocery outlets.

Plaintiff's position was categorized as that of "stocker" or "stockman", his prin-

---

1. Tate and Fruge, JJ., dissented on application for rehearing.

cipal duty being to move goods from a storeroom located in the rear of the building which housed the store, mark prices on them, and place them on the store shelves. However, he was required to perform numerous other services connected with the operation of the business. One of these was to serve as cashier, or checker, in the front of the store, in the course of which he operated an electric cash register and conveyor-counter, the latter being the mechanical device by which the cashier brings to him the customer's purchases and then moves it on to be "bagged".

Plaintiff recognizes that the operation of a retail grocery store is not listed as a hazardous business in R.S. 23:1035 of the compensation act, and our jurisprudence holds that the operation of such a store is not hazardous per se. Nevertheless, we feel impelled to note, at the outset, that during oral argument of the case, it was suggested that the nature of this defendant's business renders it hazardous, per se. We think that perhaps there is some merit in the contention, although it was not urged here by plaintiff. As indicated above, there is jurisprudence to the effect that a grocery store is not a hazardous business, per se. But we are not so certain that that jurisprudence is any longer applicable to the expanded "supermarket" chain-store type of operation. The overall nature of the employer's business must be considered—not merely the work carried in one

particular store of the enterprise. Some of the everyday observable operation of such stores is common knowledge. Certain facts brought out in this record concerning the less well known phases of the business also tend to fortify the conclusion that, given the proper suit, it might well be that the over-all operation would be held to be hazardous, per se. Thus it is well known, and compensation suits before this Court and the Courts of Appeal show, that such stores employ any number of hazardous electrical devices: meat cutting machines, coffee grinders, et cetera. The employer also operates large central warehouses to supply the individual member stores—the employees therein being subjected to the same hazards as those in commercial warehouses. Large fleets of trucks are employed, garaged and maintained. "Bagboys" or porters deliver packages to the customer's automobiles, on expansive parking lots and are then exposed to moving vehicles. There may well be other operations of a hazardous nature carried on. Although the presence of one or two of these operations might not of itself be sufficient to characterize the entire business as hazardous, a consideration of the conglomerate might lead to a different result.

It would be inappropriate for us to decide this question in the instant case, however. First of all, the question is not raised by plaintiff and, for the reasons

hereafter assigned, we allow recovery on another ground which is responsive to the issues on which the case was presented. Secondly, even if plaintiff were not allowed recovery otherwise, we could not grant him compensation benefits on the holding that a chainstore supermarket operation is hazardous in fact. The statute specifically prohibits such retroactive application. R. S. 23:1035, after declaring numerous named occupations to be hazardous then provides:

"If there be or arise any hazardous trade, business or occupation or work other than those hereinabove enumerated, it shall come under the provisions of this Chapter. *The question of whether or not a trade, business, or occupation not named herein is hazardous may be determined by agreement between the employer and employee or by submission at the instance of either to the court having jurisdiction over the employer in a civil case. The decision of the court shall not be retroactive in its effect.*" (Emphasis ours.)

See Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85.

Plaintiff's claim for compensation is based on the well-settled jurisprudence that, even though the principal business of the employer is not among the callings which are declared to be hazardous by the act, yet an employee may be considered to come under the act where there are features of the employer's business which are classified as hazardous under R.S. 23:1035, such as mechanical or electrical appliances or equipment which are used in the business, and the employee, as an integral part of his duties, is regularly and frequently exposed to and brought into contact with such appliances, albeit he is primarily engaged in the nonhazardous part. And in such case the employee is entitled to compensation benefits even though he was injured while working in a nonhazardous phase of his employment. Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303; Collins v. Spielman, 200 La. 586, 8 So.2d 608; Luce v. New Hotel Monteleone, 234 La. 1075, 102 So.2d 461; and Richard v. United States Fidelity & Guaranty Co., 247 La. 943, 175 So.2d 277.

The pertinent part of R.S. 23:1035 provides that:

"The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his employer's trade, business, or occupation in the following hazardous trades, businesses and occupations:

\* \* \* \* \* \*

"The construction, installation, *operation*, alteration, removal or repairs of wires, cables, switchboards or *apparatus charged with electrical current*." (Emphasis ours.)

Plaintiff proclaims that, inasmuch as the compensation statute declares that the operation of an apparatus "charged with electrical current" is hazardous, his frequent and regular operation of the electrically motivated cash register and conveyor-counter brought him within the coverage of the compensation act thereby entitling him to its benefits for the injury sustained while in the course and scope of his employer's business.

The defendant, on the other hand, asserts that the use of the electrically motivated cash register and counter did not, per se, bring the employment of plaintiff within the purview of the compensation statute. Its counsel argues that, even if it did, plaintiff's use thereof was not extensive and that, consequently, he was not so substantially exposed to the risk as to render his employment subject to the act.

We find little difficulty in disposing of the latter defense. On that issue, our review of the record reveals that the evidence amply sustains the holding of the Court of Appeal that plaintiff "was required to perform the duties of a checker or cashier often enough to justify the conclusion that he regularly and frequently came in contact with the cash register and the conveyor."

The more serious question presented is whether, under the language of R.S. 23:-1035, plaintiff's substantial exposure to those electrical devices rendered his employment amenable to the other provisions of the compensation law, even though it might be found that such devices were not particularly dangerous.

In dismissing plaintiff's claim the Court of Appeal adopted the reasoning of defendant and ruled that the substantial use of such electrical devices does not, of itself, render the employment hazardous, and therefore subject to the provisions of the workmen's compensation statute. Rather, it held that:

"The test to be applied in determining whether electrically-operated appliances or machinery are hazardous, and thus whether the Workmen's Compensation Act should apply to a person who regularly uses those devices in otherwise non-hazardous business, is simply whether the employee's use of or exposure to these devices is such that the risk of a work-connected injury is *materially or substantially increased over what it would have been had the employee not been subjected to these hazards.*" (Emphasis ours.)

And after a consideration of the nature of the conveyor and cash register it concluded that they:

" * * * were not of such a hazardous nature that their use by plaintiff materially or substantially increased the risk or danger of injury to him over what the

risk would have been if he had not been regularly exposed to these items. Plaintiff thus was not engaged in a hazardous feature of his employer's business, and he thus is not entitled to recover benefits as provided in the Workmen's Compensation Act."

■ Although we realize that the test set down by the Court of Appeal finds support in earlier opinions of the Courts of Appeal,[2] we do not agree with the court's conclusion or the rationale of those pronouncements. R.S. 23:1035 declares that its provisions shall apply to every person performing services arising out of and incidental to his employment in the course of his employer's business in certain named hazardous trades, one of which is the "operation * * * of apparatus charged with electrical current." The language is clear and unambiguous. We cannot, under the guise of statutory interpretation, insert into the statute a provision which would permit distinguishing between various kinds of electrical apparatus or appliances, and limit its scope to those which are thought to be more dangerous than others. To the contrary, giving the act a liberal interpretation to effect compensation coverage, which we are bound to do, we must construe the statute so as to cover the operation of *any* apparatus charged with electrical current, without regard to its size or the extent of its inherent danger.

■■ Inasmuch as the statute declares a trade or business dealing with the operation of apparatus charged with electrical current to be a hazardous one, it follows, under the jurisprudence cited above, that when an employee such as this plaintiff, is required to operate apparatus charged with electrical current as a substantial part of his employment he is engaged in a hazardous phase of his employer's business, and is entitled to compensation (when injured in the course and scope of his employment) regardless of the nature of the apparatus or appliance involved, and even though the business of the employer, generally, may not be hazardous within the contemplation of the compensation act.

■ Because of its conclusion that plaintiff was not entitled to compensation benefits based on its holding that his employment and injury did not come within the purview of the compensation law, the Court of Appeal did not make any finding as to the amount of compensation due to plaintiff. There appears to have been a serious factual disagreement between the parties as to this issue, both as to the exent of disability and the duration thereof, the de-

---

2. Claiborne v. Smith, 2 So.2d 714; Harrington v. Franklin's Stores Corp. of New Iberia, 55 So.2d 647; Coleman v. Sears, Roebuck & Company, 83 So.2d 469; Leleau v. Jacomine, 144 So.2d 921; and Honeycutt v. Sears, Roebuck & Company, 146 So.2d 860. But compare Pinchera v. Great Atlantic and Pacific Tea Company, Inc., 206 So.2d 793.

·fendants urging that if there was any residual disability from the accident, plaintiff had completely recovered by February, 1969. Consequently, in accordance with our jurisprudence,[3] the case will be remanded to the Court of Appeal for the purpose of determining the amount of compensation benefits due to plaintiff.

For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside and the case is remanded to that court for further proceedings in accordance with law and consistent with the views herein expressed. · All costs are to be paid by defendant.

TATE, J., recused.

BARHAM, Justice (concurring).

The majority has held that the plaintiff is entitled to recover workmen's compensation benefits for injuries received by him as a consequence of lifting and straining while preparing a display of canned goods in a large chain grocery. The majority has found that the plaintiff is not employed in one of the named hazardous occupations under R.S. 23:1035. It has not in the opinion made the operation of large supermarkets hazardous occupations. The majority has resorted to a jurisprudential rule which was created to extend coverage to injured employees who were not engaged in "hazardous occupations". Authority for that rule cannot be found in the Workmen's Compensation Act. The majority has allowed the plaintiff to recover, not because he was engaged in strenuous, endangering work which gave rise to his injury, but because upon a few occasions he came in contact with a conveyor and a cash register which were operated by electrical current. Plaintiff only occasionally was in contact with these devices, and he was not injured by these devices. Indeed, the devices were so designed as to offer only a minimal chance for injury, and it is not seriously argued that the electricity with which they were charged offers more than a modicum of danger of electrocution.

The majority states: " *  *  * R.S. 23:1035 declares that its provisions shall apply to every person performing services arising out of and incidental to his employment in the course of his *employer's business* in certain *named hazardous trades,* one of which is the 'operation *  *  * of apparatus charged with electrical current.' The language is clear and unambiguous." (Emphasis here and elsewhere is mine.) If that language is clear and unambiguous, then the majority cannot hold for the plaintiff because he was not em-

---

3. Succession of Brower, 228 La. 785, 84 So.2d 191; Felt v. Price, 240 La. 966, 126 So.2d 330; Reynolds v. Hardware Mutual Casualty Co., 249 La. 268, 186 So.2d 588; and Smith v. Hartford Accident and Indemnity Company, 254 La. 341, 223 So.2d 826.

ployed or doing services in the trade or occupation of operating apparatus charged with electrical curent. The majority's actual holding comes under the jurisprudence which states that even when the occupation or business of the employer is not one named as hazardous and has not been defined as hazardous by the courts, nevertheless an employee in that business who has substantial contact with features of the employer's business which can be classified as hazardous may claim workmen's compensation.

I would allow the plaintiff to recover under either of two theories. First, the named hazardous occupations of R.S. 23:1035 are not exclusive. The last paragraph of that provision reads: "If there be or arise any hazardous trade, business or occupation or work other than those hereinabove enumerated, it *shall* come under the provisions of this Chapter. The question of whether or not a trade, business, or occupation not named herein is hazardous *may* be determined by agreement between the employer and employee or by submission at the instance of either to the court having jurisdiction over the employer in a civil case. The decision of the court shall not be retroactive in its effect." The majority read the last two sentences as modifying the first and thus reasoned that only one means is provided for naming new hazardous occupations. This is not the correct interpretation. It is true that an employee and his employer may agree that an occupation is hazardous, or either may submit the question to a court for a prospective declaratory determination. However, the court must declare in any case, when warranted under the facts, that a trade or occupation is hazardous and is included under R.S. 23:1035, and that holding is applicable to the case at issue and all others of a similar nature.* The Legislature has clearly mandated the courts to classify, when necessary, new occupations as hazardous.

From the record in this case, we have ascertained that the defendant Weingarten is engaged in a large chain grocery operation. As a part of this business, central warehouses are maintained and warehouses are maintained in the rear of each supermarket. The supermarkets are equipped with electrical slicing and grinding devices and heat seal machines in the meat departments. Large delivery vans bring stock to the local stores and pick up stock for exchange with other stores. A parking lot is provided for the customers, and employees of the store must retrieve the carts which are used for carrying groceries from all over this area heavily con-

* Haddad v. Commercial Truck Co., 146 La. 897, 84 So. 197 (1920); Plick v. Toye Bros. Auto & Taxicab Co., 13 La. App. 525, 127 So. 59 (Orl.App.1930); Labostrie v. Weber, 15 La.App. 241, 130 So. 885 (Orl.App.1930).

gested with automobile traffic. Electrical devices for heating, for cooling, and for other purposes are maintained throughout the store. Moreover, the principal duty of the plaintiff here, and of many employees of such a store, is to stock the warehouse in the rear of the store, remove stock from that warehouse, and place it upon the shelves for display and sale in the front of the grocery. They must lift heavy boxes and sacks. They must climb ladders or use other devices for reaching heights. I am of the opinion that the modern supermarket should be defined by this court under the legislative grant of R.S. 23:1035 to be a hazardous occupation, and that all employees in such an occupation are covered by workmen's compensation and are entitled to recover for their injuries regardless of their duties with the establishment or their contact or lack of contact with so-called "hazardous features" of the operation.

Second, even without determining that the supermarket in this case and others like it are hazardous trades, businesses, or occupations, I would determine that the plaintiff should recover, but not simply because he works around electrical devices which are well protected. Our jurisprudence has stated that if an employee comes in contact with "hazardous features" of an employer's business which is not classified as hazardous and he is regularly and frequently exposed to such hazards, he is entitled to recover under workmen's compensation. The difficulty with the rule as enunciated by this jurisprudence is that the courts have resorted to R.S. 23:1035 to define "hazardous features". R.S. 23:1035 defines only hazardous *occupations*. Nowhere in the workmen's compensation act is "hazardous features" defined. Therefore, since we have jurisprudentially created the rule concerning hazardous work in a non-hazardous occupation, we should judicially interpret what constitutes hazardous features in order to make that rule realistic, meaningful, adequate, and current.

R.S. 23:1035 was adopted in 1914 and has not been changed since that time. The Legislature intended that the courts of this state supply the necessary interpretation to make the Workmen's Compensation Act applicable to present times. Sixty years after the passage of that particular section, we are still applying definitions which were used by the Legislature to correct ills then apparent. The Legislature was trying to provide some financial assistance to the employees who it believed in those times were most exposed to harm because of the nature of the *business* in which they were employed. While operation of motor vehicles for hire is not a named hazardous occupation, certainly the Legislature of 1914, if it were possible, and our present Legislature would join us in stating that it is an occupation far more hazardous than

chimney-sweeping, which is a named hazardous occupation. See footnote, supra.

The accidents envisioned by the Legislature of 1914 were the ones which were common to the times. These injuries anticipated were dismemberment, breaking and mangling of members of the body, and cutting or burning of the body by the many new machines and devices of the industrial age. The injuries common in workmen's compensation cases today occur not only from contact with machinery but from exposure to risks of harm that are totally disassociated with machinery.

As previously noted, hazardous features of employment, hazardous work, are not defined by the statute. Rather than be straitjacketed and misled by resorting to an inapplicable section of the statute for definition of hazardous activities, we should be realistic and include hazard in fact. Heavy lifting, climbing, exposure to excessive heat, and numerous other duties should be declared to be hazardous work or hazardous features of employment in an nonhazardous trade. We cannot wrap ourselves in the cocoon of R.S. 23:1035 and declare that we are bound to define hazardous duties under the terminology there found. That section was not intended as a definition of hazardous features of employment, and it does not sensibly define that term. Is it reasonable to believe that our Legislature intended that a salesman in a nonhazardous occupation who travels by railroad should be covered by the act, but that a laborer in the same occupation who lifts hundred-pound bags or pushes a heavily loaded wheelbarrow all day should not be covered? Do we really believe that the law anticipated that all who flip light switches should recover under the act, but that their fellow employees who lift and strain all day at hard, physical labor should not?

The plaintiff should recover because the business in which he was employed is hazardous, and we should declare it so. Alternatively he should recover because the lifting and moving of merchandise, the climbing, and the other general duties required of him in his employment were hazardous work in fact—a hazardous feature of his employment.

I respectfully concur.

SUMMERS, Justice (dissenting).

The pertinent language of the Workman's Compensation Act provides:

The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his employer's trade, business, or occupation in the following *hazardous* trades, businesses and *occupations*:

\*    \*    \*    \*    \*    \*

The construction, installation, *operaation,* alteration, removal or repairs of wires, cables, switchboards or *apparatus*

*charged with electrical current.* (Emphasis added.)

In my view the Act applies to "hazardous occupations" which for the purpose of this case are defined as "operation of apparatus charged with electrical current." When these terms are read together in a commonsensical light the conclusion must be reached that the occupation to be hazardous must involve "hazardous apparatus charged with electrical current." This record does not support a finding that the electrically motivated cash register and counter are hazardous in fact. This being so, they are not properly to be considered hazardous under the Act.

There is every reason to believe that apparatus charged with electrical current as contemplated in 1914 when the Act was passed by the Legislature, which may then have been universally hazardous, had not attained the degree of refinement and sometimes perfection which has been attained in the manufacture of much of today's electrical apparatus; including this cash register and counter.

The Act's charge that courts accord a liberal interpretation to its provisions in favor of the claimant does not, in my opinion, require that relief be granted in this case. Even a mandate for a liberal attitude does not require the courts to depart entirely from logic, reason or common sense.

I respectfully dissent.

GLADNEY, Justice Ad Hoc (dissenting).

Louisiana's Workmen's Compensation Act is restricted to injuries occurring in hazardous businesses, trades, or occupations, as designated in R.S. 23:1035. Included are those specifically enumerated and others indirectly by reason of certain hazardous characteristics.

We find in the last classification, hazardous businesses, involve " * * * the construction, installation, operation, alteration, removal or repairs of wires, cables, switchboards or apparatus charged with electric current."

The salient facts in the instant case disclose that Fontenot was employed in a business not listed as hazardous per se; that his accidental injury occurred while performing non-hazardous duties; and that he also was employed to operate a cash register and a conveyor belt empowered by a small electric motor. The facts relating to the employee's operation of the cash register and conveyor belt were determined by the Court of Appeal (232 So.2d 143):

"The cash register which he used was powered by a small enclosed electric motor. He operated it simply by punching some keys or buttons located on the front of the device to ring up the amount of each sale. Several girls were regularly employed to serve as checkers or cashiers, and plaintiff was required to work in that

capacity only when there was a 'rush' in the store. The evidence does not show that he was ever required to repair the register, to change a tape on it or to expose the motor or wiring in any manner.

"The counter near the cash register was equipped with two moving rubber conveyer belts. These belts were looped over rollers or pulleys, and two electric motors connected with these pulleys caused each belt to move when the current was applied to the proper motor. The counter-top surface of each belt was about 18 inches wide and four to five feet long. One belt was used to convey the merchandise which had been checked away from the cashier to the front end of the counter where it was bagged and taken by the customer. The first belt was activated or caused to move by a foot switch which was depressed by the cashier with his foot when he wanted to draw the merchandise toward him. The other belt was activated by a hand switch, similar to an electric light wall switch. The cashier turned on that switch with his hand when he wanted to move merchandise on the counter away from him.

"The two electric motors which operated these belts were located at opposite ends of the checking counter. The cashier stood near the center of that counter, so he was several feet from either motor while he was checking merchandise. Both motors and all pulleys were completely enclosed, and a person could not come in contact with either of the motors or with any of the pulleys or wiring without first using a screwdriver to remove one of the covering panels. The evidence shows that these panels were removed only by maintenance men, and not by cashiers or stockers.

"A metal plate covered the crack or space near the center of the checker's counter where these two belts came together. Occasionally coins or other small items would slide under the metal plate and drop between the two moving belts. When that occurred, the cashier usually lifted up the metal plate and reached down between the belts and retrieved the coin or other small item. This space between the two belts was about one foot wide. The motor, of course, would not be operating when these items were removed, and no motors, wires or pulleys were exposed at the place where the items dropped.

His operation of the cash register and conveyer-belt did not, therefore, regularly expose him to or bring him into frequent contact with a hazardous feature of this non-hazardous business, and they were not of such a nature as to be inherently more hazardous than those ordinarily encountered so that the danger of harm to him increased with their use.

As a consequence, actual operation of these devices is without conceivable risk

of injury and does not in fact constitute a hazardous feature of plaintiff's employment. The Court of Appeal so found, holding:

> "The test to be applied in determining whether electrically-operated appliances or machinery are hazardous, and thus whether the Workmen's Compensation Act should apply to a person who regularly uses those devices in otherwise non-hazardous business, is simply whether the employee's use of or exposure to these devices is such that the risk of a work-connected injury is materially or substantially increased over what it would have been had the employee not been subjected to these hazards."

The majority opinion of this court in referring to the rule so applied by the Court of Appeal, declared:

> "Although we realize that the test set down by the Court of Appeal finds support in earlier opinions of the Courts of Appeal,[1] we do not agree with the court's

1. The cases listed in note 1 are: "Claiborne v. Smith, 2 So.2d 714; Harrington v. Franklin's Stores Corp. of New Iberia, 55 So.2d 647; Coleman v. Sears, Roebuck & Company, 83 So.2d 469; Leleau v. Jacomine, 144 So.2d 921; and Honeycutt v. Sears, Roebuck & Company, 146 So. 2d 860. But compare Pinchera v. Great Atlantic and Pacific Tea Company, Inc., 206 So.2d 793."

conclusion or the rationale of those pronouncements. R.S. 23:1035 declares that its provisions shall apply to every person performing services arising out of and incidental to his employment in the course of his employer's business in certain named hazardous trades, one of which is the 'operation * * * of apparatus charged with electrical current.' The language is clear and unambiguous. We cannot, under the guise of statutory interpretation, insert into the statute a provision which would permit distinguishing between various kinds of electrical apparatus or appliances, and limit its scope to those which are thought to be more dangerous than others. To the contrary, giving the act a liberal interpretation to effect compensation coverage, which we are bound to do, we must construe the statute so as to cover the operation of *any* apparatus charged with electrical current, without regard to its size or the extent of its inherent danger."

In rejecting an adjudication of the case upon its facts the decree has held hazardous that which is in fact not hazardous. This construction of R.S. 23:1035 is repugnant to and inconsistent with the avowed purpose of the statute and intention of the legislature to restrict its scope to hazardous employments.

Progress has imposed upon almost every business now regarded as non-hazardous the necessity of using electricity in its daily operations. Must those classifications be

changed because an employer is required to regularly use an electric typewriter, a telephone or some other harmless electric device?

If the Workmen's Compensation Act does restrict its application to businesses classified as hazardous under R.S. 23:1035 such as are not hazardous in fact should not be affected by the statute. The construction so accorded R.S. 23:1035, in my opinion, is inconsistent with established guidelines for statutory interpretation. Thus the primary object in construing a statute is to give effect to the intention of the legislature and the intent as deduced from the whole will prevail over the part considered separately. Fruge v. Muffoletto, 242 La. 659, 137 So.2d 336; and meaning that will extend the statute to a situation never intended to be covered thereby will not be imputed. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594; on remand 163 So.2d 812. Justice Strong of the United States Supreme Court in The Dollar Savings Bank v. United States, 19 Wall. 227, 22 L.Ed. 80, 81, upon consideration of an interpretation of a provision in the statute, said:

"The broad construction of the Act contended for makes it plainly repugnant to the body of the Act, and therefore is inadmissible."

Being of the opinion the majority decision of this court is in error, I respectfully dissent from the views expressed therein.