MILLER, Judge.
The trial court awarded plaintiff Joseph Raymond Fontenot total and permanent *627 workmen’s compensation benefits. This court reversed, holding that the business of operating a grocery store is not hazardous, that plaintiff was not exposed to hazardous features of such business, and that, consequently, he was not entitled to compensation benefits. La.App., 232 So.2d 143. The Louisiana Supreme Court granted cer-tiorari, 255 La. 807, 233 So.2d 248 (1970) and reversed. 259 La. 217, 249 So.2d 886 (1971). The case was remanded to us to determine the extent of plaintiff’s disability and the duration thereof. .
We find that plaintiff’s present disability is wholly related to a prior injury, and that he had recovered from the June 2, 1968 accident on February 11, 1969. The trial court’s judgment is amended to award $35 a week for temporary total disability from June 3, 1968 through February 11, 1969. Medical expenses are also awarded.
The trial court’s opinion with respect to disability is as follows:
“With reference to the question of disability, the evidence indicates that on the evening of the accident the plaintiff and his co-worker were stacking up a display of boxes. As the plaintiff handled boxes weighing from 30 to 40 pounds he felt a burning sensation in his back. This occurred just before the evening work (was completed) and he went on home and the next day reported to a doctor.
“The evidence further indicates that the plaintiff suffered a severe back injury a few years before this accident in an automobile accident. However, it is in evidence that his injuries incurred in that accident had subsided and he was well at the time of this accident. Under all the evidence, the Court finds that the plaintiff was in fact rendered disabled from this accident.”
The trial court’s opinion did not summarize the medical evidence. This evidence establishes that plaintiff was permanently disabled from injuries sustained in an automobile accident which occurred March 12, 1966. As a result of the 1966 accident, plaintiff was unconscious for five or six days, hospitalized for three months and his entire body was in a spica body cast for a period of four or five months. His injuries were diagnosed as a compression fracture of the second lumbar vertebra and a broken ankle.
Plaintiff was under follow-up care for these injuries for more than one year after he was released from the hospital. His medical records show that on March 23, 1967, plaintiff was told that he “should never (return) to extremely heavy work in the future.”
While recovering from the 1966 accident, plaintiff was involved in another automobile accident when the car in which he was a passenger, struck two mules. Plaintiff was seen by Dr. Charles J. Aswell of Ville Platte, but denied that he sustained an injury in that accident. Dr. Aswell’s testimony is somewhat vague. At Tr. 25 and 26 he implies that plaintiff’s compression fracture may have resulted from the second automobile accident.
The first employment that plaintiff obtained following the 1966 injuries was with Weingarten’s. In September of 1967, plaintiff went to work for defendant. He signed a written application in which he specifically denied having a prior back injury. Tr. 144. At this pre-employment physical, he signed a statement listing a tonsillectomy in 1966 as his only prior operation or injury. The examining physician testified that he specifically questioned plaintiff about prior injuries and they were denied.
Based on plaintiff’s stated history and particularly his denial of a back problem, an x-ray examination was not made part of the pre-employment physical. It was established that plaintiff’s disability would not be discovered in a pre-employment physical unless a back x-ray was made. It was also established that plaintiff would not have been accepted for employment if (1) he had admitted that he sustained a *628 back injury, or (2) an x-ray of plaintiff’s back had been made.
It was established that plaintiff was a good worker for Weingarten’s and that he never complained. He regularly handled cartons of canned food and stocked shelves.
Plaintiff described the accident in his pretrial deposition (Tr. 172) as occurring when he handed a case of canned food to a fellow employee “and I felt something hot in my back.” He did not say anything about the problem. This was the last work of the evening, so he went home and went to bed. His back got stiff. He specifically stated that his back “wasn’t bothering me” following the accident. Tr. 175. The next morning he went to work and was placed on light duty. He informed the management that he was weak and hurt his back the day before and he was told to see a doctor.
At trial, plaintiff testified that when he swung a case of canned food up to a coworker working above him, “it just came hot in my back, * * * but I didn’t pay no mind to it, I’d just go ahead and work for maybe another fifteen (15), Twenty (20) minutes, then we knocked off. The next morning I got up and I was all stiff, so I didn’t want to miss no work, I went to work. Then my legs started getting weak, so Mr. Matt told me to go to the doctor, so I did.” Tr. 220.
Plaintiff chose as his physician and went to see Dr. Fritz LaCour of Lake Charles. Dr. LaCour did not testify, but plaintiff said that he was told by Dr. LaCour to “stay off work.” A few days later, Wein-garten’s sent plaintiff to see Dr. Robert C. Looney of Lake Charles. Plaintiff called Dr. Looney as his witness.
Dr. Looney saw plaintiff on June 17 and 18, 1968. He found that plaintiff had marked paravertebral muscle spasm, pain on motion in almost any direction, very tender on palpation of the paravertebral muscles, and with visible tilt to his spine. Plaintiff was given muscle relaxants and medication for pain and told to return the following day (June 18) for x-rays. The x-rays revealed a compression fracture of the second lumbar vertebra, with incomplete healing and with compensatory scoliosis. On direct examination by plaintiff’s counsel, Dr. Looney testified that in his opinion plaintiff would recover from the Weingarten injury “within three to six months.” Tr. 42. Without the compression fracture, Dr. Looney estimated four to eight weeks would be sufficient for a complete recovery.
On cross-examination by defense counsel, Dr. Looney testified that plaintiff did not admit the 1966 accident until after the x-ray examination revealed the fracture. At that time, plaintiff stated that he knew about his back fracture.
Dr. Looney testified that the disability related to the 1966 accident would prevent plaintiff from lifting and he would also have “advised him that he should have worn some type of support even if he did try to do some type of lifting.” Tr. 46.
Plaintiff never returned to see Dr. Looney after the June 18, 1968 x-ray examination.
Plaintiff was seen as an out-patient at Charity Hospital in New Orleans on July 15, August 15, and September 26, 1968. The medical record is in evidence as a defense exhibit but the physicians did not testify.
Plaintiff was seen by Dr. C. J. Aswell of Ville Platte on August 21, and 28, 1968 and on May 30 and June 20, 1969. The case was tried on June 5, 1969, but Dr. Aswell’s deposition was taken on June 30, 1969.
Dr. Aswell was unable to relate plaintiff’s disability to the Weingarten accident. But he testified that it would be hard to assume that plaintiff would be working after the 1966 accident if he had the muscle spasm that he found. Dr. Aswell stated that there would be no reason why plaintiff should get a compression type *629 fracture from the Weingarten accident alone. Tr. 17. When asked whether or not plaintiff’s disability would be permanent, Dr. Aswell answered at Tr. 19:
“A. I wouldn’t want to make that statement. I’d rather leave it up to the Orthopaedist or the Neuro (surgeon), whoever you want to send him to, to say whether it is permanent, because this man might have surgery done or maybe put in a cast or some other definitive treatment, and maybe he might get — he might get well, I don’t know. I would rather not make that statement.”
He did testify that plaintiff was disabled for an undetermined period as of June 20, 1969. Tr. 20. But this disability was apparently related to the compression type fracture which did not result from the Weingarten accident.
The spasm which Dr. Aswell found in June 1968 was “in the larger muscle, the soleus, and of course the muscles coming out of the — more or less the hip area, but the soleus is the one that had most of it.” A great deal of Dr. Aswell’s testimony indicated that the spasm was found mostly in the legs.
Dr. Aswell did not explain why plaintiff did not return to him for the ten month period after August 28, 1968, until immediately before and after trial. He didn’t think that plaintiff took medication for his condition after August, 1968. Tr. 28.
Defendant sent plaintiff to Dr. Norman P. Morin, orthopedic surgeon of Lake Charles. Plaintiff was seen by Dr. Morin on February 11, 1969.
In giving his history, plaintiff described the Weingarten accident and only one prior automobile accident. Plaintiff complained of an intermittent low back burning pain with some radiation into both hips. Dr. Morin performed a comprehensive physical and x-ray examination. He found no spasm in the back, hip or leg areas and no sciatic pain.
Plaintiff’s complaint of diminished sensation to pain in the low back was totally inconsistent and Dr. Morin found that plaintiff was putting on and that the complaints were not genuine. Tr. 100, 101, 103, 104.
Dr. Morin was the only orthopedic surgeon or specialist to testify. He found that as of February 11, 1969, plaintiff was just as capable of returning to work at Weingarten’s as before the strain of June 2, 1968. Dr. Morin did not recommend this type of work for plaintiff. But this was only because of the defect in plaintiff’s back resulting from the 1966 automobile accident. Tr. 105-107. Dr. Morin found no evidence of residual injury from the Weingarten accident and stated that if plaintiff had complaints of pain, they resulted from the old injury. Tr. Ill, 114.
To summarize, plaintiff knew that he had a severe back defect resulting from a 1966 automobile accident. He specifically denied prior back injuries in answering pre-employment questionaire and the pre-employment examining physician. On June 2, 1968, plaintiff sustained a straining injury to his low back area of a moderate to severe nature. Plaintiff did not call his treating physician, Dr. LaCour. The second treating physician, plaintiff’s witness Dr. Looney, estimated that plaintiff would recover from the Weingarten straining injury within three to six months (by December 18, 1968), and plaintiff never returned to him. Plaintiff saw specialists at Charity Hospital in New Orleans in July, August and September, but did not attempt to take their testimony. Plaintiff’s treating physician, Dr. Aswell, agreed that he would defer to the opinions of orthopedic surgeons or neurosurgeons. The only specialist to testify was the orthopedic surgeon Dr. Morin. Dr. Morin is convincing in his conclusion that plaintiff had completely recovered from the Weingarten accident by February 11, 1969.
*630 Plaintiff has failed to prove disability, resulting from the Weingarten accident, beyond February 11, 1969.
The judgment of the trial court is amended to award workmen’s compensation at the rate of $35 per week for. temporary total disability from June 3, 1968 through February 11, 1969. All medical expenses attendant to the June 2, 1968 straining injury of the back are awarded to plaintiff.
As amended the trial court judgment is affirmed. All costs of court are assessed to defendant appellant.
Amended and affirmed.