LOTTINGER, Judge.
This is a suit ex delicto filed by Clara Mae Shepherd and Willie Shepherd against Fort Sherwood Apartments, a commercial partnership composed of C. C. Rushing, J. L. Tucker, Jr., et al. The petition was amended to plead coverage under Louisiana Workmen’s Compensation Act alternatively. From a judgment finding workmen’s compensation coverage, the defendants have appealed.
*299 Mrs. Shepherd was employed as a maid by the defendants, and her primary duties consisted of general cleaning duties. She cleaned out the apartments that were vacant as well as the laundry room located within the apartment complex. In doing so, she used an electric vacuum cleaner and a rug shampooer. She also cleaned out the electric refrigerators, stoves, washing machines, clothes dryers as well as changing the lint filters on the clothes dryers. Further, she used the electric clothes dryers periodically when it was necessary for her to have drapes tumbled in the dryer so as to fluff them.
She was injured when she fell from a ladder, while cleaning an electric light fixture located in front of an apartment. Mrs. Delaney, one of the apartment managers on day of the accident, told Mrs. Shepherd to clean the light fixtures on the second floor apartments. Mrs. Shepherd misunderstood her employer’s instructions and cleaned both the first and second floor light fixtures. While using a ladder to clean one of the fixtures on the first floor, she fell injuring herself.
The Trial Court found that the plaintiff failed to prove negligence on the part of the defendants, and therefore could not recover in tort. The Trial Judge found that the plaintiff simply misunderstood the instructions given to her as to which floor of the apartments to clean the light fixtures on, therefore finding that Mrs. Shepherd was not instructed to use a ladder which was too short for the job she was to do. The Trial Court then found that Mrs. Shepherd was entitled to coverage under the Louisiana Workmen’s Compensation Act. The Lower Court found that the accident without question occurred during the course of the plaintiff’s employment by the defendant, as well as within the scope of her employment.
In finding that the plaintiff was within the scope of her employment when the accident happened, the Lower Court relied heavily on the recent case of Fontenot v. J. Weingarten, Inc., 259 La. 217, 249 So.2d 886 (1971). The Trial Judge interpreted the Fontenot v. J. Weingarten, Inc. case to hold that “the operation of any apparatus charged with electrical current rendered an employment hazardous without regard to the size or extent of danger inherent from the electrical apparatus.” Thus finding that the plaintiff’s use of a vacuum cleaner, a rug shampooer, and being required to clean an electric refrigerator, stove, washing machine, and clothes dryer rendered her employment hazardous, and thus covered by the Louisiana Workmen’s Compensation Act. The Trial Judge said, “In the instant case, Mrs. Shepherd’s daily use of the electrically charged vacuum cleaner and shampooer, and her day to day contact with other electrically charged appliances such as the washers and dryers, rendered her employment hazardous under the terms of R.S. 23:1035.”
Since the Trial Judge based his decision entirely on the case of Fontenot v. J. Weingarten, Inc., supra, and because the case expresses a complete departure from what the appellate courts of this state have held in the past, we find it imperative to make a close evaluation and analysis of this opinion.
In the Fontenot case, supra, Chief Justice McCaleb wrote the majority opinion. In that case, the defendant was a stockman in a supermarket. While preparing a display of canned goods, a non-hazardous feature of defendant’s business, he sustained a straining-type injury to his back. Even though the principal duty of the plaintiff was to move goods from a storeroom, mark prices on them, and then place them on the store shelves, he was also required to serve as a cashier or checker in the front of the store, in the course of which he operated an electric cash register and conveyor-counter.
The Supreme Court in its majority opinion felt compelled to make mention of the fact that the defendant had “similar stores in the locality, and, in connection with *300 these, it uses a number of van-type trucks necessary for the delivery of merchandise to these grocery outlets.”
The Court went further when it discussed the overall character of chain type supermarkets operations, as follows:
“Plaintiff recognizes that the operation of a retail grocery store is not listed as a hazardous business in R.S. 23:1035 of the compensation act, and our jurisprudence holds that the operation of such a store is not hazardous per se. Nevertheless, we feel impelled to note, at the outset, that during oral argument of the case, it was suggested that the nature of this defendant’s business renders it hazardous, per se. We think that perhaps there is some merit in the contention, although it was not urged here by plaintiff. As indicated above, there is jurisprudence to the effect that a grocery store is not a hazardous business, per se. But we are not so certain that that jurisprudence is any longer applicable to the expanded ‘supermarket’ chain-store type of operation. The overall nature of the employer’s business must be considered —not merely the work carried in one particular store of the enterprise. Some of the everyday observable operation of such stores is common knowledge. Certain facts brought out in this record concerning the less well known phases of the business also tend to fortify the conclusion that, given the proper suit, it might well be that the over-all operation would be held to be hazardous, per se. Thus it is well known, and compensation suits before this Court and the Courts of Appeal show, that such stores employ any number of hazardous electrical devices: meat cutting machines, coffee grinders, et cetera. The employer also operates large central warehouses to supply the individual member stores — the employees therein being subjected to the same hazards as those in commercial warehouses. Large fleets of trucks are employed, garaged and maintained. ‘Bagboys’ or porters deliver packages to the customer’s automobiles, on expansive parking lots and are then exposed to moving vehicles. There may well be other operations of a hazardous nature carried on. Although the presence of one or two of these operations might not of itself be sufficient to characterize the entire business as hazardous, a consideration of the conglomerate might lead to a different result.”
The Court then stated that it was inappropriate for it to decide this question in this case.
In reaching its decision Chief Justice McCaleb in the majority opinion stated:
“The more serious question presented is whether, under the language of R.S. 23:1035, plaintiff’s substantial exposure to those electrical devices rendered his employment amenable to the other provisions of the compensation law, even though it might be found that such devices were not particularly dangerous.
“In dismissing plaintiff’s claim the Court of Appeal adopted the reasoning of defendant and ruled that the substantial use of such electrical devices does not, of itself, render the employment hazardous, and therefore subject to the provisions of the workmen’s compensation statute. Rather, it held that:
‘The test to be applied in determining whether electrically-operated appliances or machinery are hazardous, and thus whether the Workmen’s Compensation Act should apply to a person who regularly uses those devices in otherwise nonhazardous business, is simply whether the employee’s use of or exposure to these devices is such that the risk of a work-connected injury is materially or substantially increased over what it would have been had the employee not been subjected to these hazards.’ (Emphasis ours.)
“And after a consideration of the nature of the conveyor and cash register it concluded that they:
‘ * * * were not of such a hazardous nature that their use by plaintiff *301 materially or substantially increased the risk or danger of injury to him over what the risk would have been if he had not been regularly exposed to these items. Plaintiff thus was not engaged in a hazardous feature of his employer’s business, and he thus is not entitled to recover benefits as provided in the Workmen’s Compensation Act.’
“Although we realize that the test set down by the Court of Appeal finds support in earlier opinions of the Courts of Appeal, we do not agree with the Court’s conclusion or the rationale of those pronouncements. R.S. 23:1035 declares that its provisions shall apply to every person performing services arising out of and incidental to his employment in the course of his employer’s business in certain named hazardous trades, one of which is the ‘operation *• * * of apparatus charged with electrical current.’ The language is clear and unambiguous. We cannot, under the guise of statutory interpretation, insert into the statute a provision which would permit distinguishing between various kinds of electrical apparatus or appliances, and limit its scope to those which are thought to be more dangerous than others. To the contrary, giving the act a liberal interpretation to effect compensation coverage, which we are bound to do, we must construe the statute so as to cover the operation of any apparatus charged with electrical current, without regard to its size or the extent of its inherent danger.
“Inasmuch as the statute declares a trade or business dealing with the operation of apparatus charged with electrical current to be hazardous one, it follows, under the jurisprudence cited above, that when an employee such as this plaintiff, is required to operate appartus charged with electrical current as a substantial part of his employment he is engaged in a hazardous phase of his employer’s business, and is entitled to compensation (when injured in the course and scope of his employment) regardless of the nature of the apparatus or appliance involved, and even though the business of the employer, generally, may not be hazardous within the contemplation of the compensation act.”
Mr. Justice Barham in concurring disagrees with the reasoning used by Chief Justice McCaleb wherein Justice Barham states :
“The majority has held that the plaintiff is entitled to recover workmen’s compensation benefits for injuries received by him as a consequence of lifting and straining while preparing a display of canned goods in a large chain grocery. The majority has found that the plaintiff is not employed in one of the named hazardous occupations under R.S. 23:1035. It has not in the opinion made the operation of large supermarkets hazardous occupations. The majority has resorted to a jurisprudential rule which was created to extend coverage to injured employees who were not engaged in ‘hazardous occupations’. Authority for that rule cannot be found in the Workmen’s Compensation Act. The majority has allowed the plaintiff to recover, not because he was engaged in strenuous, endangering work which gave rise to his injury, but because upon a few occasions he came in contact with a conveyor and a cash register which were operated by electrical current. Plaintiff only occasionally was in contact with these devices, and he was not injured by these devices. Indeed, the devices were so designed as to offer only a minimal chance for injury, and it is not seriously argued that the electricity with which they were charged offers more than a modicum of danger of electrocution.
“The majority states: ‘* * * R.S. 23:1035 declares that its provisions shall apply to every person performing services arising out of and incidental to his employment in the course of his employer’s business in certain named hazardous trades, one of which is the “operation *302 * * * of apparatus charged with electrical current.” The language is clear and unambiguous.’ (Emphasis here and elsewhere is mine.) If that language is clear and unambiguous, then the majority cannot hold for the plaintiff because he was not employed or doing services in the trade or occupation of operating apparatus charged with electrical current. The majority’s actual holding comes under the jurisprudence which states that even when the occupation or business of the employer is not one named as hazardous and has not been defined as hazardous by the courts, nevertheless an employee in that business who has substantial contact with features of the employer’s business which can be classified as hazardous may claim workmen’s compensation.
“I would allow the plaintiff to recover under either of two theories. First, the named hazardous occupations of R.S. 23:1035 are not exclusive. The last paragraph of that provision reads: ‘If there be or arise any hazardous trade, business or occupation or work other than those hereinabove enumerated, it shall come under the provisions of this Chapter. The question of whether or not a trade, business, or occupation not named herein is hazardous may be determined by agreement between the employer and employee or by submission at the instance of either to the court having jurisdiction over the employer in a civil case. The decision of the court shall not be retroactive in its effect.’ The majority read the last two sentences as modifying the first and thus reasoned that only one means is provided for naming new hazardous occupations. This is not the correct interpretation. It is true that an employee and his employer may agree that an occupation is hazardous, or either may submit the question to a court for a prospective declaratory determination. However, the court must declare in any case, when warranted under the facts, that a trade or occupation is hazardous and is included under R.S. 23:1035, and that holding is applicable to the case at issue and all others of a similar nature. The Legislature has clearly mandated the courts to classify, when necessary, new occupations as hazardous.
;jc s}c sfc %
“Second, even without determining that the supermarket in this case and others like it are hazardous trades, businesses, or occupations, I would determine that the plaintiff should recover, but not simply because he works around electrical devices which are well protected. Our jurisprudence has stated that if an employee comes in contact with ‘hazardous features’ of an employer’s business which is not classified as hazardous and he is regularly and frequently exposed to such hazards, he is entitled to recover under workmen’s compensation. The difficulty with the rule as enunciated by this jurisprudence is that the courts have resorted to R.S. 23:1035 to define ‘hazardous features’. R.S. 23:1035 defines only hazardous occupations. Nowhere in the workmen’s compensation act is ‘hazardous features’ defined. Therefore, since we have jurisprudentially created the rule concerning hazardous work in a non-hazardous occupation, we should judicially interpret what constitutes hazardous features in order to make that rule realistic, meaningful, adequate, and current.
“R.S. 23:1035 was adopted in 1914 and has not been changed since that time. The Legislature intended that the courts of this state supply the necessary interpretation to make the Workmen’s Compensation Act applicable to present times. Sixty years after the passage of that particular section, we are still applying definitions which were used by the Legislature to correct ills then apparent. The Legislature was trying to provide some financial assistance to the employees who it believed in those times were most exposed to harm because of the nature of the business in which they were employed. While operation of mo *303 tor vehicles for hire is not a named hazardous occupation, certainly the Legislature of 1914, if it were possible, and our present Legislature would join us in stating that it is an occupation far more hazardous than chimney-sweeping, which is a named hazardous occupation. See footnote, supra.
* * * * * *
“The plaintiff should recover because the business in which he was employed is hazardous, and we should declare it so. Alternatively he should recover because the lifting and moving of merchandise, the climbing, and the other general duties required of him in his employment were hazardous work in fact — a hazardous feature of his employment.”
In dissenting Mr. Justice Summers stated:
“The pertinent language of the Workmen’s Compensation Act provides:
The provisions of this Chapter shall also apply to every person performing services arising out of and' incidental to his employment in the course of his employer’s trade, business, or occupation in the following hazardous trades, businesses and occupations:
sfc tfc * * *
The construction, installation, operations, alteration, removal or repairs of wires, cables, switchboards or apparatus charged with electrical current. (Emphasis added.)
“In my view the Act applies to ‘hazardous occupations’ which for the purpose of this case are defined as ‘operation of apparatus charged with electrical current.’ When these terms are read together in a commonsensical light the conclusion must be reached that the occupation to be hazardous must involve ‘hazardous apparatus charged with electrical current.’ The record does not support a finding that the electrically motivated cash register and counter are hazardous in fact. This being so, they are not properly to be considered hazardous under the Act.
******
“The Act’s charge that courts accord a liberal interpretation to its provisions in favor of the claimant does not, in my opinion, require that relief be granted in this case. Even a mandate for a liberal attitude does not require the courts to depart entirely from logic, reason or common sense.
“I respectfully dissent.”
Judge Gladney, sitting as a Justice Ad Hoc, in dissenting said :
“In rejecting an adjudication of the case upon its facts the decree has held hazardous that which is in fact not hazardous. This construction of R.S. 23:1035 is repugnant to and inconsistent with the avowed purpose of the statute and intention of the legislature to restrict its scope to hazardous employments.
“Progress has imposed upon almost every business now regarded as non-hazardous the necessity of using electricity in its daily operations. Must those classifications be changed because an employer is required to regularly use an electric typewriter, a telephone or some other harmless electric device ?”
We have read this decision of our Supreme Court, we have studied it, we have digested it, and we cannot agree with what is being said by the majority. We agree with the dissenting opinions. This decision is far reaching in its application. Even though the plaintiff in that case used several pieces of “apparatus charged with electrical current”, under the decision as rendered by the Supreme Court, taken to its logical conclusion, the mere use by the plaintiff of the electrical vacuum cleaner alone places her within the coverage of the Louisiana Workmen’s Compensation Act.
We must now ask whether under this decision a legal secretary who uses an electric typewriter is covered by workmen’s compensation; whether a bookkeeper who *304 uses an electric adding machine is covered; an employee in an office who uses dictating equipment, an intercom system, or any of the hundreds of small harmless electrical items is covered by workmen’s compensation? The gates have been opened, and now all will be covered.
Mr. Justice Summers in his dissent said:
“The Act’s charge that courts accord a liberal interpretation to its provisions in favor of the claimant does not, in my opinion, require the relief be granted in this case. Even a mandate for a liberal attitude does not require the courts to depart entirely from logic, reason or common sense.”
In Leleau v. Jacomine, 144 So.2d 921 (La.App. 4th Cir., 1962) writs denied, with Judge, now Justice, Dixon as the organ of the Court, held that a plaintiff who worked in a motel, cleaned each room that had been rented, using a vacuum cleaner twice a week on the Venetian blinds and air conditioners as well as on rugs, cleaned the refrigerators in certain apartment units of the motel, and cleaned the electric motor driven window fans, and at least every other day washed things in a motor driven wringer type washing machine was not covered by workmen’s compensation when she stumbled and fell when carrying an armful of dirty linen. This particular case discussed several prior decisions of the Court that had allowed coverage by workmen’s compensation where small electrical appliances were involved. We believe that the Leleau decision represents the true intent of the law as enacted by the Legislature.
We do not agree with the decision of the Supreme Court, we do not see the logic, but it is a decision of the Supreme Court of this State, and right or wrong, whether we like it or not we are compelled to follow that decision. Therefore, under the circumstances we cannot find any error with that part of the Trial Judge’s decision wherein he decreed that the plaintiff was covered by the Workmen’s Compensation Law.
The defendant-appellant contends that the Trial Court erred “in finding that the plaintiff, Clara Mae Shepherd, was injured as a result of an accident while in the scope of her employment.” They contend that the plaintiff was never told to clean the downstairs lights, and in doing so, was outside the scope of her employment when she was injured.
In answering the question of whether the plaintiff was within the scope of her employment, the Trial Judge in his written reasons for judgment stated:
“The Court has no doubt that Mrs. Delaney told Mrs. Shepherd to clean the upstairs only, but Mrs. Shepherd thought she was to clean both, the upstairs and the downstairs fixtures. Even though it is apparent that Mrs. Shepherd was outside the scope of her instructions when she was injured the Court feels that this was due, to her mistaken belief that her employer wanted her to clean the downstairs fixtures.
“In other cases involving a mistake by the employee as to his duties the courts have found that if the duties were in furtherance of his employer’s business and not his own or some other person’s, the workmen can recover even though the work of the employee was performing when injured was outside his sphere of operation or beyond the employer’s instructions.
“Accordingly, Mrs. Shepherd was within the scope of her employment when the accident happened.”
We have studied the record in this proceeding, and it is obvious to this Court that the plaintiff was mistaken and merely assumed she was also supposed to clean the light fixtures on the first floor. The fact that the plaintiff misunderstood the in *305 structions and did a function in error does not bar her from recovery. Sears v. Peytral, 151 La. 971, 92 So. 561 (1922). Therefore, we find no error on the part of the Trial Court.
The defendant-appellant next contends that the Trial Judge “erred in finding that plaintiff, Clara Mae Shepherd, had become totally and permanently disabled due to the injuries sustained by her.”
Doctor Donald E. Harris, a general practitioner, was the only medical expert to testify. He was the treating physician and testified that she had suffered a severe lumbosacral strain. He termed her back injury “chronic” and said she would continue to have trouble from it. The doctor further testified that Mrs. Shepherd would not be able to do manual work as required by her occupation as a maid for prolonged periods. He stated that she could still be having pain a year after the trial.
The question was raised by the defendant-appellant as to causal connection between the fall and the back injury. There seems to have been no question in the Lower Court’s mind as to this connection, and neither is there in ours.
It is quite apparent from the jurisprudence, even, without citation, that a worker is totally and permanently disahled when he is incapacitated by job-related injuries which prevent him from performing work of the same or similar nature from which he was accustomed to performing at the time he was injured.
The Trial Judge listened to the testimony of the doctor, and was convinced that this plaintiff was totally and permanently disabled. We see no reason to change that ruling.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Judgment affirmed.