308 So.2d 472 (1975)
Cleveland CARTER
v.
AVONDALE SHIPYARDS, INC.
No. 6633.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1975.
Rehearing Denied March 12, 1975.
Shushan, Meyer, Jackson, McPherson & Herzog, Donald A. Meyer, Hugh C. Uhalt, New Orleans, for plaintiff-appellee.
*473 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for defendant-appellant.
Before BOUTALL, SCHOTT and MORIAL, JJ.
MORIAL, Judge.
Avondale Shipyards, Inc., appeal a judgment of the district court awarding total and permanent disability benefits to Cleveland Carter.
Avondale first contends that plaintiff has failed to establish that he was disabled as a result of an accident within the meaning of the Louisiana Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., and second that plaintiff has established no causal relationship between the disability incurred and the alleged accident of May 10, 1971. Carter argues: (1) that by a preponderance of the evidence it was proven that an accident did occur on May 10, 1971; and (2) that accident was the "precipitating event" which caused the disability complained of.
In a detailed written analysis of the evidence and testimony, the trial court found that Carter had proved a disabling accident in the course of his employment. Avondale's appeal questions these findings.
At the time of the alleged incident Carter was a 42 year old Negro male who had worked for Avondale Shipyards, Inc., for approximately 20 years. During these years he did heavy laboring work at Avondale Service Foundry Division. His job functions included the melting and pouring of test bars into molds; extracting them from the molds; and carrying them to their next station for testing. During the course of this 20 years plaintiff had been injured six to eight other times but had always returned to work.
On September 14, 1970 plaintiff injured his back and shoulder on the left side. His injury was diagnosed by Dr. Ewin of Houston, Roy, Faust, & Ewin as a left rhomboid muscle strain. He first saw Dr. Ewin on December 7, 1970 at which time physical therapy and analgesics were prescribed. Dr. Ewin again saw the plaintiff on December 10. He was released to go back to work on December 17. Plaintiff was again seen by Dr. Ewin on December 30, with the same complaint of pain in his back from side to side. He was again discharged when, upon examination, there were no objective findings. Plaintiff again saw Dr. Ewin on January 14, 1971 complaining of the same pain in the rhomboid area. He was referred to Dr. Soboloff, who recommended that plaintiff have about four weeks light work, limited to lifting 50 pounds or less. Plaintiff was again placed on physical therapy. Plaintiff was then released to full duty by Dr. Soboloff on March 4, 1971.
Plaintiff was next treated by Dr. Ewin on May 10, 1971. He complained of hurting his back and left arm and stated that his shoulder was jerking. A diagnosis was made of a left rhomboid muscle strain with no objective findings. He was again seen by Dr. Ewin on May 13 at which time he was having frequent jerking movements. The doctor observed that the trapezius, pectoral major, deltoid and tricep muscles were jerking. At that time plaintiff said it was an involuntary movement but that it could be stopped when the arm was put in a position so that the shoulder and elbow were extended.
Avondale denies the occurrence of the May 10, 1971 accident. Avondale argues no accident report was made on that date and from the testimony it is clear that this man did not have an accident on May 10. Defendant cites the testimony of one of its employees, Mr. Grady Goodjohn, the supervisor under whom plaintiff worked. Goodjohn testified that he was not aware that Carter was complaining of an accident when he informed Mr. Goodjohn on May 10 that he could no longer work and had to go and see a doctor. Defendants further cite the testimony of Sibley Coye who testified that the plaintiff complained to him of gas pains on May 9, 1971. Coye further testified that the plaintiff told him that his doctor had told him that he had a pinched *474 nerve or pulled muscle and that he was going to continue to have treatment by his doctor for that condition. He stated he was told this on May 10, 1971.
In opposition to this testimony is that of a fellow worker and family friend of Carter, Jessie Stewart. He testified that he and the plaintiff were shaking out some test bars and that the plaintiff was carrying two of them to the front when he dropped them. Stewart asked the plaintiff what was wrong and the plaintiff replied that his arm "give out." Stewart saw the plaintiff leaving for home after plaintiff talked with Mr. Goodjohn. Stewart testified that upon a subsequent meeting with Carter he witnessed Carter's shoulder jerking or jumping.
Carter testified that he was lifting two heavy test bars when he experienced pain in his upper arm, shoulder and back. He dropped the bars which were approximately 40 pounds each and had a jerking or jumping sensation in his left arm. Plaintiff reported to Mr. Goodjohn who called Mr. Sanford, another supervisor. Arrangements were made for him to visit Doctors Houston, Roy, Faust and Ewin. Plaintiff never returned to work at Avondale.
The trial court in its reasons for judgment states:
"The appellate courts of Louisiana have held that an employee must establish an accident by a preponderance of the evidence, i. e., by evidence which as a whole, shows it to be more probable than not that an accident occurred at work. In making this determination, great weight is attached to the trial court's evaluation of the credibility of the witnesses. Landry v. Employers Liability Assurance Corporation, Ltd., 233 So.2d 624, 626 (La.App.1970). This court finds that plaintiff sustained his burden of proof in this respect. Further, in determining whether a claimant's disability is causally related to an accident, great weight attaches to the fact of a sudden change from a condition of health or ablebodiedness prior to the accident to one of disability immediately following thereafter. Ardoin v. Houston Fire and Casualty Co., 235 So.2d 426, 429 (La. App.1970)."
The jurisprudence in Louisiana is consistent that great weight must be given to the findings of fact of the trial court especially when those findings pertain to the credibility of witnesses. From the above it is apparent that the trial court believed plaintiff's witnesses as well as the plaintiff and made a factual determination that there was an accident on May 10, 1971. From our careful review of the record we find no testimony which would illustrate to us manifest error on the part of the trial court in the evaluation of these witnesses. Accordingly, we hold that there was an accident on May 10, 1971. LSA-R.S. 23:1031 provides:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."
Having found that plaintiff was an employee of defendant who sustained a personal injury caused by an accident arising out of and in the course of employment, we turn to the legal question of whether plaintiff's present disability is causally connected to his accident.
Avondale called several doctors who testified as to the physical condition of plaintiff. Dr. Ewin and Dr. Dunn, general surgeons, testified that plaintiff manifested no physical disability. Dr. Soboloff testified from an orthopedic standpoint that there was no orthopedic disability. Dr. Levy testified from a neurological standpoint that there was no neurological disability. Yet plaintiff's physical disability, the twitching or jerking of the left arm uncontrollably continues. In an effort to determine the cause and proper treatment for plaintiff's disability he has seen two psychiatrists, *475 both of whom testified at the trial. Both Dr. Kenneth Ritter, psychiatrist for the plaintiff and Dr. J. W. Seastrunk who testified for the defendant were of the opinion that plaintiff was not a malingerer and was totally and permanently disabled from doing the work he had been doing prior to the May 10 accident.
Dr. Ritter characterized the psychiatric problem of plaintiff as one of a conversion reaction in which the mental problem manifests itself in an outward or physical way. He testified that the accident of May 10 represents an event in a process which covers the entire spectrum of plaintiff's life. This would include factors not only of conditions at work but conditions of personal life as well. Plaintiff was a man who was faced with a conflict. That conflict being the necessity of finding lighter work as his age progressed as opposed to the fact that he had no education and had done no other work other than that which he had done for Avondale. It was this conflict combined with the physical environment of his home life, financial problems plus the fact that plaintiff felt subconsciously that he had not been properly treated by Avondale in that, as had been suggested by his doctors, he was not permitted to perform light work only. Dr. Ritter testified that it was all these conditions, not any one in particular, which led to the emotional condition of plaintiff on May 10, 1971. Dr. Ritter went on to testify that this could have been the straw that broke the camel's back but that the disability was occurring all the while. He characterized plaintiff's condition as "fertile soil with the precipitating event and then the resulting disability."
Dr. Seastrunk testified for the defendant. His diagnosis was essentially the same as Dr. Ritter's. It was his opinion that the total makeup of plaintiff's life contributed a great deal to the emotional condition of plaintiff. He opined that plaintiff displaced his problem or conflict by the use of the arm twitching. Displacement is the focusing of a particular conflict from its cause to a substitute that is more acceptable and less threatening. Dr. Seastrunk further opined that while plaintiff's home life and other aspect of his life were controlling upon his mental condition, he did testify that it was plaintiff's inability to cope with work at Avondale, as he had for the prior 20 years, which caused or precipitated the disability involved. While Dr. Seastrunk was of the opinion that anything that could have happened would have been "focused" by the plaintiff as a displacing factor, he did agree that if the accident occurred it could have been the last straw in attempting to work at Avondale.
Though psychiatric disability must be viewed with extraordinary care, in Muse v. Sentry Insurance Company, 269 So.2d 609, 614 (La.App. 3 Cir. 1972) it is stated:
"Louisiana allows awards of compensation for disability resulting from neurosis caused by an injury in the course of employment. Tate v. Gullett Gin Company & Liberty Mutual Ins. Co., 86 So. 2d 698 (La.App. 1st Cir., 1956) and cases cited therein at p. 702. There is no necessity that there also be a physical disability. Harrell v. Delta Drilling Company, 251 So.2d 97, 100 (La.App. 3rd Cir., 1971); writ refused, 259 La. 896, 253 So.2d 221 (1971)."
Drs. Ritter and Seastrunk both testified that the accident, if it did occur, coupled with plaintiff's pre-existing emotional stress could be the precipitating factor causing plaintiff's present condition. It is settled in our jurisprudence that an employer takes an employee as he finds him and is liable to him for compensation even when the disabling accident was such only because of a pre-existing disorder to the employee. Odom v. Kaiser Aluminum & Chemical Corporation, 282 So.2d 580 (La. App. 4 Cir. 1973); Harrell v. Delta Drilling Company, 251 So.2d 97 (La.App. 3 Cir. 1971) writ denied, 259 La. 896, 253 So.2d 221 (1971).
In this case plaintiff has carried his burden of proof that the accident of *476 May 10 was a causative factor in his ensuing injury. He need not prove it was the sole causative factor, but that it was a causative factor in the resulting disability. The accident triggered plaintiff's conversion reaction manifesting itself in a specific physical symptom resulting in his disability. This triggering role is sufficient to support an award under our workmen's compensation act. See Williams v. Bituminous Casualty Corporation, 131 So.2d 844 (La.App. 2 Cir. 1961).
Our jurisprudence has consistently held that a worker is totally and permanently disabled when he is incapacitated by job related injuries which prevent him from performing work of the same type or similar in nature to that which he was accustomed to performing at the time he was injured. Muse v. Sentry Insurance Company, supra; Shepherd v. Ft. Sherwood Apartments, 270 So.2d 298 (La.App. 1st Cir. 1971) writs denied 272 So.2d 375 (La.1972); Griffin v. Hochendel, 263 So. 2d 474 (La.App. 1st Cir. 1972) writs denied, 262 La. 1105, 266 So.2d 425 (1972); Adams v. Maloney Carloading, Inc., 240 So.2d 57 (La.App. 4th Cir. 1970).
For the foregoing reasons, the judgment is affirmed.
Affirmed.